## George H. Van Etten v. William Eaton.

*Corporations : Organization under the general laws : Reports required by §§ 5, 18 and 19 of Comp. Laws, Chap. 63 : Their object : Liability of directors for neglect.* The general act under which a company becomes incorporated and its articles of association, taken together, constitute the charter of the corporation; the acceptance of which, charges the corporation with knowledge of all the duties prescribed by the act, and of all consequent liabilities.

The neglect of a majority of the directors to make a report required by §§ 5, 18 or 19, or to file it in any one of the places where the act requires it to be filed, will be presumed to be intentional ; and such neglect, in the absence of all explanation, will render each director liable for all debts of the corporation contracted during the period of such neglect.

The object of the Legislature in requiring the reports to be made and filed was to secure accessible means of information respecting the financial condition of the corporation, wherever it should be actually conducting its operations.

*Heard October 6. Decided October 12.*

VAN ETTEN v. EATON.

Error to Bay Circuit.

Eaton, the plaintiff below, recovered a judgment against the Chicago and Milwaukee Salt Company, a corporation organized under the laws of Michigan ( *Comp. Laws, Chap. 63* ), on which execution was issued and returned unsatisfied. He then brought this action against Van Etten, the defendant below, alleging that Van Etten was, and ever had been since its organization, a director of the corporation; that the directors of the said corporation had intentionally neglected to make the reports required by sections five and nineteen of the act, under which the corporation was organized; and that thereby the defendant ( Van Etten ) had become liable to him for the amount of his judgment and costs against the corporation.

From the articles of the corporation it appeared that the purpose for which it was formed was " for the manufacture of salt in the State of Michigan. " Article six specifying the place where its business should be carried on, is in these words:—" The place in this state where the office for the transaction of business is located, is the City of East Saginaw, and their business is to be carried on in the Counties of Saginaw and Bay, and the adjoining counties, if necessary. " Copies of the articles of association were duly filed in the office of the Auditor General and in the office of the Clerks of Saginaw and Bay Counties.

On the trial evidence was offered that the Company kept its office in Bay City in Bay County; and that upon search in said office no report as required by section five, of Chapter sixty-three of the Compiled Laws could be found. The Clerk of Bay County testified that he had made diligent search in his office and had found no report as required by sections five, eighteen, and nineteen of Chapter sixty-three of the Compiled Laws. No evidence was offered to show whether there was, or was not, any such reports filed in the office of the Auditor General or of the Clerk of Saginaw County.

The Circuit Judge charged the jury that the neglect to file any of the reports required by the statute, must be presumed to be intentional, and that, if any of the reports required were not filed, the defendant would be liable in this action. The jury found for the plaintiff; and the judgment rendered on the verdict is brought into this Court by writ of error.

*Theo. C. Grier,* for plaintiff in error.

*H. H. Hatch and S. M. Green,* for defendant in error.

GRAVES J.

Eaton brought assumpsit against Van Etten to recover a demand against a manufacturing corporation organized under the act of February 5, 1853, and of which Van Etten was a stockholder and director. The action was supposed to be authorized by that portion of section 23 of the act, which provides that if the directors of any such company shall intentionally neglect or refuse to comply with the provisions, and to perform the duties required of them by sections three, five, eighteen and nineteen of the act, they shall be jointly and severally liable in an action founded on such statute for all the debts of such corporation contracted during the period of such neglect or refusal. And the liability of Van Etten was claimed to have arisen, by reason of the failure of the directors of the company to report upon the condition of the company, as required by sections five and nineteen of the statute in question.

The assignments of error are quite numerous, but all of them which are now relied on, depend upon the construction to be given to the statutes, and do not require therefore to be separately noticed.

It appeared upon the trial that on the 21st of March 1862, the plaintiff in error and two other persons, adopted

articles of association and formed a corporation for the manufacture of salt, and that the articles stated that the place in this State where the office of the company for the transaction of business was located, was in the city of East Saginaw, and that their business was to be carried on in the counties of Saginaw and Bay, and the adjoining counties if necessary.

Evidence was also given to show that from the winter of 1864, the company had carried on business in Bay County and had kept an office there, and that neither of the reports required by §§ 5 and 19 could be found in the office of the clerk of Bay County, or in the office of the company in that County.

On the part of the defendant evidence was given tending to show, that he was not aware that any law of the State required the making and filing of any reports of the kind mentioned, and was ignorant of any such law; and did not know whether or not the reports had been filed; and had not intentionally neglected or refused to conform to the requirements of the statute and indeed had no knowledge of such requirements and thought nothing about them.

Whether the reports in question had been filed in the office of the Auditor General or in that of the clerk of Saginaw County did not appear, nor was it shown whether the company carried on business in the latter County, unless the statement in the articles of association that at their date the office of the company was there situated, should be considered as evidence of that fact.

First. The plaintiff in error maintained that the requirement in section 19 that the reports should be filed in the office of the clerk of the County in which the business of the corporation should be carried on, had reference only to the County in which was situated the office of the company mentioned in the articles of association pursuant to

the provisions of section four, and therefore as this office of the company was fixed by the articles of association in the County of Saginaw the omission by the directors to file the report in question in the office of the clerk of Bay County was of no legal consequence whatever.

This construction is thought to be supported by the difference in phraseology discovered in sections 3, 4 and 19.

By section 3, before the corporation can commence business the articles of the association are required to be filed with the " County Clerk of the county or counties" in which the corporation shall "conduct" its business; and by § 4 the corporation are required to state in the articles, the "place in this State where their office for the *transaction* of business is located and the *county* or *counties* in which their business is to be carried on;" but § 19 requires the report therein specified to be filed in the ". office of the clerk of the county in which the business of any such corporation is carried on."

The plaintiff in error contends that this variation in phraseology marks the purpose of the Legislature, and shows that where an act was required to be done in more than one county, the phrase " county or counties " was used, while in directing any thing to be done in but one county the expression employed was " the county."

It appears to us, however, that this difference in language was wholly accidental and was never intended to point to the distinction now insisted on.

Section 4 distinguishes between the county in which the business office may be situated, and other counties in which the corporation may carry on business, and thereby repels the inference that the statute in referring to the county in which the business is carried on, must be taken as meaning the same county in which the office is located.

The Legislature contemplated that the company office might be in one county and the· business operations, aside

from mere office work, entirely carried on in another county or counties more or less remote; and it is not wholly unworthy of notice that the only passage in the act which in terms alludes to the company office, speaks of it as the "office for the *transaction* of business," and not as the place where the corporation is to "carry on business" or "conduct the mining or manufacturing business."

It is therefore seen that the language of the act which refers to the company office implies that the business spoken of in connection with it, is such as could be "*transacted*" at the office, and not actual mining or manufacturing which could only be done elsewhere, and that while the language relating to the office and its business would exclude any operations consisting of the actual working of the mine or manufactory, the other portions of the act which speak of "carrying on" or "conducting" business are broad enough to include actual mining and manufacturing.

But, turning from this somewhat narrow view of the subject, it seems evident that a leading object of the Legislature, in requiring the reports in question to be made and filed, was to secure accessible means of information to those having business with the company respecting the financial condition of the corporation wherever it should be actually conducting its manufacturing operations. And as its nominal business office might be separated from the place, or places where its works should be fixed, and its material operations carried on, by great distance and many serious obstacles to the communication, there was quite as much reason for requiring the report mentioned in section 19 to be filed with the clerk of the county in which the manufacturing should be done, as in that of the county in which the office for "transacting" business should be situated, if a different one, and upon consideration we think that the Legislature intended by the section last cited, to require the report there specified to be filed in the office of the

clerk of every county in which the material business of manufacturing should be done.

Second. It was further objected that as § 23 only fixes the personal liability of the directors when they "intentionally neglect or refuse to comply with the provisions and to perform the duties required of them by sections 3, 5, 18 and 19," their liability cannot arise unless the duties imposed by each and all of those sections shall have been intentionally neglected. This position is plainly untenable.

Section eighteen is expressly applicable and only applicable to mining corporations, and the directors of a manufacturing corporation can commit no fault by non-action under it, since its provisions impose no duty on the officers of such a corporation.

The provision referred to in § 23 must be taken distributively, and be applied according to the nature of the corporation involved in the duty required.

Third. It was also urged by the plaintiff in error that it was necessary for Eaton to show that the neglect imputed to the directors was intentional, and that whatever inference as to intention might properly be drawn from the bare omission to report, the jury were not bound to consider it as sufficient evidence of an intention to neglect the duty in question, although no explanation of the cause or reason of the failure was submitted.

If the plaintiff should be required in the first instance to prove by direct evidence the actual intent in the minds of the delinquent directors, and should be precluded from making proof by inference from the fact of omission to perform the act required by the statute, the object of the law would be seriously obstructed, if not in many cases altogether defeated.

The directors might at their pleasure neglect to report, and by a careful abstinence from any overt act or word to mark their design, make their liability depend upon

19 MICH.—Y.

their own testimony, and a resort to that, by one seeking to fix a liability upon them might be made difficult and sometimes impossible by accident or contrivance.

It is hardly credible that the Legislature could have intended to fetter so beneficial a provision, as that in question, in the manner now contended for.

The organic act under which the corporation was formed, together with the articles of association, are to be considered as the charter of the company, and they are in the nature of a grant from the State to the corporators expressing the rights and privileges conferred and the conditions annexed to them, and the deliberate acceptance of this grant, with the rights and privileges involved in it, is conclusive evidence in the civil proceeding authorized by § 23 of knowledge in the grantees or corporators of all those conditions.

The plaintiff in error and his associate corporators must therefore be considered as having been acquainted with the requirement to make and file reports of the condition of the company; and we think that in view of this circumstance, and, in the absence of all explanation, or countervailing proof, of the omission by the directors to file the report in the office of the clerk of Bay County was sufficient evidence to require the jury to find that the neglect was intended, and that the Circuit Judge was warranted in directing the jury accordingly.

Fourth. It was finally insisted that VanEtten could be made answerable only in consequence of his own intentional neglect as a director, and not by reason of the neglect of his co-directors, who constituted a majority of the Board, and this position was supposed to be supported by the language of § 23 itself.

This view however cannot be maintained. A *majority* of the directors are required to make the report specified in § 19, while § 23 *expressly authorizes* an action against *all* the directors jointly in case of an intentional neglect to make it, and this, notwithstanding the minority of the

board may have been ready to comply, while the controlling majority involved the whole in disobedience.

It will be observed likewise that the passage in the last named section, which makes the neglect to report a misdemeanor, expressly confines the criminality to such of the directors as were "*present and acting*" at any time during the neglect. This denotes that the Legislature were of opinion that a director would be exposed to the civil remedy, although he had never been present and acting, since the only difference in the circumstances as stated in the section, to authorize a civil or criminal proceeding, is caused by the restrictive paragraph just cited.

These considerations are deemed sufficient to show that the Legislature intended, that a director guilty of no personal neglect might be made liable for the debts of the corporation, in case a majority of the directors should intentionally neglect to report as required, and hence, it is not thought necessary or expedient to extend this opinion by pursuing the question further.

Whether under the circumstances of this case, the omission to put any report on the files of the company office in Bay County, was attended by any legal consequence need not be determined, since the neglect which was clearly established, to file it in the office of the clerk of that county was, of itself, sufficient. It will also be observed, in this connection, that in 1867 and 1869 the Legislature so amended section five, in respect to the report there specified, as to make it subject to an interpretation quite different from that which it called for before. *Laws 1867 p. 126 ; Laws 1869 p. 116.*

The positions taken by the plaintiff in error have been examined, and it appears to us that they fail to show any error committed by the Court below, and we think the judgment should be affirmed with costs.

The other Justices concurred.