D. B. Coleman *vs.* L. E. Pearce, impleaded, etc

June 27, 1879.

**Estoppel—Pleading.**—Matter constituting an estoppel *in pais* need not be pleaded as such to enable a party to take advantage of the estoppel on the trial. *Caldwell* v. *Augur*, 4 Minn. 156, (217,) followed on this point.

**Same—Representation by Partners.**—Defendant O'N., a commission merchant of Milwaukee, received from plaintiff, a resident of Minnesota, a quantity of wheat and grass seed on consignment, with directions to hold in store, to sell when ordered, and to account for the proceeds, after deducting the usual commission charges and advances made thereon. Before any order for a sale was given, the defendant P. became a partner in the business with O'N. Notice of this fact was thereupon given to plaintiff, both by the firm and by P. in person, and plaintiff was given to understand and made to believe, by accounts rendered in the name of the firm from time to time, and otherwise, by the defendants, that the account between him and O'N., together with the property which was the subject of the consignment, had been transferred to the firm, and that the latter was holding and carrying it for him under the original instructions given to O'N. Relying upon this state of facts, believed to be true, plaintiff, from the receipt of the notice of the partnership, ceased to regard O'N. as his factor in respect to the consignment, and ever afterwards looked to and treated the firm as alone occupying that relation in the place of O'N. Trusting to the responsibility of the firm alone, he withheld any order for a sale for some months, when, upon giving it, he was informed for the first time by P. that O'N. had then become insolvent, and that the firm had never, in fact, taken possession of the wheat as represented, but that it had been converted by O'N. to his own use prior to the formation of the copartnership. *Held,* in an action against the defendants for a conversion of the wheat as copartners, that they were both estopped from denying the truth of the facts thus falsely represented, upon the faith of which the plaintiff had acted.

**Same—Absence of Wrongful Intent.**—If a party falsely asserts the existence of a fact, under circumstances calculated to mislead, and upon the faith of which another is misled, and acts without fault on his part, when the party so asserting occupies a position which makes it his duty to know, and gives him the means of ascertaining the exact truth in respect to the matter, he will be estopped from controverting the fact so alleged, though he may have made the misrepresentation through ignorance and without wrong intent.

**Same—Representation by one Partner.**—If one partner, in the name of his firm, makes a false representation as to a fact, under circumstances precluding him from disputing it, the firm and its other members will be

equally precluded, if the fact is such that the representation would be binding upon the firm if true, and is also one concerning the truth of which the firm and its members possess peculiar means of knowledge, not enjoyed by the party to whom the representation is made.

**Conversion by Factor.**—An agent entrusted with wheat to hold, and sell when directed by his principal, and to account for the proceeds, is liable as for a conversion of the property in case he wrongfully refuses to sell or to account when directed, but unlawfully retains possession against the wishes of his principal.

**Pleading—Denial of Value.**—The rule as to the insufficiency of a general denial of an allegation of value adopted by this court in *Lynd* v. *Picket*, 7 Minn. 128, (184,) and *Pottgieser* v. *Dorn*, 16 Minn. 204, adhered to and followed in this case.

Appeal by plaintiff from an order of the district court for Mower county, *Page*, J., presiding, granting a new trial. The action was against B. A. O'Neill and L. E. Pearce, and the latter was alone served with process and defended the action. The case is stated in the opinion.

*E. O. Wheeler*, for appellant.

*Cameron & Crane*, and *Geo. N. Baxter*, for respondent.

The plaintiff having pleaded an actual conversion by defendants, cannot rely on the facts creating the alleged estoppel, which he has not pleaded. *Gill* v. *Rice*, 13 Wis. 555; *Wood* v. *Ostram*, 29 Ind. 177; *Ransom* v. *Stanberry*, 22 Iowa, 334; *Phillips* v. *Van Schaick*, 37 Iowa, 229; *Davis* v. *Davis*, 26 Cal. 23; *Etcheborne* v. *Auzerais*, 45 Cal. 121; *Clarke* v. *Huber*, 25 Cal. 593.

The burden was on plaintiff to make out the estoppel, (*Hawkins* v. *M. E. Church*, 23 Minn. 256,) which must be strictly made out by evidence. *Andrews* v. *Lyons*, 11 Allen, 349. And to estop the defendant Pearce, the plaintiff should have shown that he relied or acted on the alleged representations, and, in consequence of relying or acting on them, so changed his situation that he will be injured if the truth of the matter is allowed to be shown. Bigelow on Estoppel, 437; *Zuchtman* v. *Roberts*, 109 Mass. 53; *Hawkins* v. *M. E. Church*, 23 Minn. 256; *Northern Line Packet Co.* v. *Platt*, 22 Minn. 413; *Chynoweth* v. *Tenney*, 10 Wis. 402; *Racine Co. Bank* v.

*Lathrop*, 12 Wis. 519. But the plaintiff did not change his situation to his injury in consequence of any reliance on the representations. O'Neill had sold the wheat before the partnership was formed, and thereafter plaintiff had merely a right of action against O'Neill. The utmost he can claim is that he was prevented from enforcing this right of action, by being kept in ignorance of the conversion; but there is no evidence that he thereby sustained any damage.

Pearce, having acted in good faith, being himself deceived, should not be estopped from gainsaying his representation. *Dezell* v. *Odell*, 3 Hill, 215; *Welland Canal Co.* v. *Hathaway*, 8 Wend. 480.

But even if Pearce is estopped from showing the truth of the matter, there is no evidence of a conversion by the firm. If the firm is to be held responsible for wheat that never came into its hands, the plaintiff must show a conversion by the firm. But the only breach of duty charged on the firm is its failure to sell the wheat according to plaintiff's order of July 21st. But the failure to sell and account for the proceeds was not a conversion. No demand for the wheat was shown, and even if there had been, the plaintiff could not have maintained his action without a tender of the amount of defendants' lien. 1 Chitty Pl. 172; *Fairbanks* v. *Phelps*, 22 Pick. 535. To support an action of trover, there must be a positive tortious act. *Polley* v. *Lenox Iron Works*, 2 Allen, 184. The defendants being lawfully in possession of the wheat, having a lien for advances, (*The Francis*, 8 Cranch, 418; *Baker* v. *Fuller*, 21 Pick. 318; *Jordan* v. *James*, 5 Ohio, 89,) trover will not lie against them for a mere omission or non-feasance. 1 Chitty Pl. 175; *Bowlin* v. *Nye*, 10 Cush. 416; *Carnes* v. *Bleecker*, 12 John. 300; *Jenner* v. *Joliffe*, 6 John. 8; *Robinson* v. *Austin*, 2 Gray, 564; *Hawkins* v. *Hoffman*, 6 Hill, 586; *McCombie* v. *Davis*, 6 East, 540; *Devereux* v. *Barclay*, 2 B. & Ald. 702. And plaintiff's remedy must be by an action on the case, in which the measure of damages would be the actual loss occasioned him, and

not the value of the property, with interest, as in an action for conversion.

CORNELL, J.* The order granting a new trial is not accompanied with any statement or opinion of the court showing reasons therefor, and hence we are unadvised as to the particular ground upon which it was made—whether for insufficiency of evidence, or for errors in the rulings of the court upon the trial.

In answer to the first point made by the defendant in support of the order, it is sufficient to say that in *Caldwell* v. *Augur*, 4 Minn. 156, (217,) it was expressly decided that matter constituting an estoppel *in pais* need not be pleaded as such, to enable a party to take advantage of the estoppel on the trial, and this rule has never since been questioned in this court.

Upon the evidence and pleadings there is ample support for the following findings of fact. For sometime prior to January, 1875, the defendant O'Neill was conducting the business of a commission merchant at Milwaukee, dealing in wheat and produce for other parties on commission. During that time, plaintiff, a resident of this state, consigned to him 1716 pounds of grass seed, and 2457½ bushels of wheat, with instructions to hold in store and sell when directed, and to account for the proceeds after deducting the usual commission, freight charges, and whatever advances might be made thereon. On receipt of the consignment, O'Neill credited plaintiff with the same, and advanced to him thereon $1500.35, which he charged in account. In the forepart of January, 1875, before any sale was ordered, defendant Pearce became associated with O'Neill in the business, which was thereafter continued and carried on by both the defendants as copartners under the firm name of O'Neill & Pearce. Of this change the plaintiff was advised, both by the firm and by Pearce himself, and he was also given to understand, from

*Gilfillan, C. J., did not sit in this case.

their statements and representations, that the firm had taken possession of the consigned property from O'Neill, assumed his liabilities and obligations, and succeeded to his rights in respect thereto, and to all advances theretofore made thereon; and that it was then being held by the firm, upon the same terms and conditions as O'Neill had received and held it in the first instance. O'Neill sent the plaintiff a statement of the account between them in respect to the transaction as it stood on the first day of January, 1875, which showed a balance from plaintiff to O'Neill, for moneys advanced on account of the consignment, of $1689.89. Soon after this, Pearce informed plaintiff that he had bought into the business, and "that the next statement would be from the firm, instead of from O'Neill." He also told him, at different times subsequently, that the firm was holding the wheat, and in April he said to the plaintiff that "he (Pearce) thought wheat would be lower, and he would advise him to sell, were it not that they (defendants) held it, and therefore plaintiff might think them interested in having it sold." After the formation of the partnership, all the correspondence with plaintiff about the property was conducted by and in the name of the firm, and upon the assumption that the firm had it in its possession, and was holding it in store for plaintiff, under the same instructions and obligations as O'Neill had previously held it.

In April, 1875, the grass seed was sold by the firm, and an account thereof rendered to plaintiff, accompanied with a statement from the firm showing the state of the account between them at that time. In this statement plaintiff was debited with the balance of the O'Neill account, and credited with the amount of the net proceeds realized from the sale of the grass seed, and it also showed a balance then existing, in favor of the company against the plaintiff, of $1662.46. About the same time, the firm sent to plaintiff another statement, purporting to show what charges had been incurred for storage and insurance, on account of the wheat, prior to November 20, 1874, and that the same had been charged to

the debit or plaintiff in his account with the firm. In the written communication accompanying this statement, plaintiff was informed as to the then condition of the market, and notified by the firm "that after April 15, 1875, there would be added for storage one-half per cent., and for every ten days thereafter an additional half cent." In the same letter thus addressed to and received by plaintiff, the firm said: "You know what the interest is on your regular monthly account. We can't give you any advice about prices."

Thus matters stood until the 21st day of July following, when plaintiff telegraphed to the firm to sell his wheat, and this was the first and only order or authority he ever gave for its sale or disposition. The next day Pearce wrote to plaintiff that the partnership had been dissolved the day before; "that O'Neill was worth nothing," and that he (Pearce) had just learned "that the wheat had been sold by O'Neill sometime before." On the 27th day of July, he wrote to plaintiff another letter, in which, for the first time, he claimed that O'Neill had sold the wheat before the formation of the partnership between them, and that he never had any notice or knowledge of this fact until about the time of the dissolution of the firm. In his testimony on the trial, he swore that the failure of O'Neill was caused by dealing in options, against his (Pearce's) wishes and advice. The plaintiff's testimony in his own behalf tended to show that he withheld the order for a sale of his wheat longer than he otherwise would, because of his personal acquaintance with the defendant Pearce, and the confidence it inspired in the responsibility of the firm that, as he supposed, had voluntarily taken charge of the consigned property under the original arrangement between him and O'Neill.

Upon these facts and this evidence, the jury were justified in coming to the conclusion arrived at and indicated by their verdict, that O'Neill, prior to the formation of the copartnership with Pearce, was solvent, and able to respond pecuniarily to any and all just claims against him, and that he so

remained for sometime thereafter; that before the 21st day of July, 1875, and before the plaintiff had any intimation that O'Neill had, previous to the existence of the firm, individually converted the wheat to his own use, the latter became so utterly insolvent that no claim against him was of any real value, inasmuch as he had no property out of which its collection could be enforced; that the conduct and correspondence of the firm in its dealings with plaintiff, as well as the statements of Pearce himself, were well calculated to induce a belief that the business of the agency originally entrusted with O'Neill, together with the property to which it related, and all the rights, duties and liabilities therewith connected, had been transferred to the firm immediately upon its creation, and that the firm was to be treated thereafter by the plaintiff as his agent or factor in respect to the consignment, and as having sole charge and control of the property, as such, instead of O'Neill; and that the plaintiff in fact and in good faith relied upon the belief thus produced, and consequently made no inquiries into the previous conduct of O'Neill as the original consignee, and became possessed of no knowledge or information indicating the existence of any claim against him individually, as such, until it was too late to realize anything out of it on account of his insolvency.

As thus presented, the case discloses all the essential elements of an estoppel *in pais*. Having led the plaintiff into a position where he must suffer loss in case the facts asserted by their conduct and representations were untrue, they are not at liberty now to assert to the contrary, or to show any different state of facts than as so represented. *Pence v. Arbuckle*, 22 Minn. 417; *Continental Nat. Bank v. Nat. Bank of Commonwealth*, 50 N. Y. 575; *Blair v. Wait*, 69 N. Y. 113.

The contention of the defendant Pearce that he was innocent of any intentional wrong or deception in the statements he personally made to the plaintiff concerning the transaction, for the reason that he had been himself deceived by his partner in reference thereto, and actually believed in the

truth of the statements when he made them, is of no avail as a defence.    His position as a copartner gave him the right to know and the means of ascertaining the actual facts in respect to all matters connected with the partnership, and it imposed upon him the duty of knowing the exact truth as to any statement made by him concerning its transactions to any customer dealing with the firm, and entitled to the information.    When the defendant Pearce, therefore, represented to the plaintiff that the firm of which he was a member was actually holding his wheat as his factor in place of O'Neill, he was bound to know whether it was true or not.    Want of knowledge, under the circumstances, was an act of culpable negligence on his part, to which the law affixes the same consequences as to an intentional and known misrepresentation. *Pence* v. *Arbuckle,* 22 Minn. 417; *Manufacturers' & Traders' Bank* v. *Hazard,* 30 N. Y. 226; *Continental Nat. Bank* v. *Nat. Bank of Commonwealth,* 50 N. Y. 575; *Blair* v. *Wait,* 69 N. Y. 113.

In respect to the further claim made on behalf of the defendant Pearce, that he cannot be held liable for any of the alleged misrepresentations of fact contained in the different accounts and communications sent by his partner to the plaintiff in the name of the firm, for the reason that he had no personal knowledge as to their character, it is a sufficient answer, that the matters embraced in the accounts thus rendered, and referred to in such communications, were within the scope of the ordinary and authorized business of the firm, and that the facts which were therein falsely assumed to be true were presumably within the knowledge of the firm and both the partners, who, from the circumstances of the case, possessed peculiar means of knowing the truth in respect thereto, not enjoyed by the plaintiff.    The rule in such cases estops both the firm and all its members from controverting the truth of the facts so misrepresented, to the prejudice of the party relying and acting thereon in good faith.    *Griswold* v. *Haven,* 25 N. Y. 595.

The charge of the court upon this branch of the case was correct, and no error was committed in the refusal to give the defendants' requests, for the reason that they entirely ignored the question of any estoppel, except in so far as they were covered by the charge as given.

It is also contended by the defendant Pearce that the evidence of a conversion of the wheat by the firm was insufficient to sustain the verdict, for the reason that the proof which was made by the defendants, without objection, showed that it was never in fact received by the firm from O'Neill, but was converted by him before he entered into partnership with Pearce. Such proof was unobjectionable, and admissible to disprove the alleged fact of a conversion by the firm, unless, by its acts and representations, it was estopped from denying that it had possession of the property when it was ordered to be sold. Whether it did any such acts, or made any such representations, was a question for the jury and not for the court, and hence plaintiff cannot be regarded as having waived his right to insist upon the alleged estoppel before the jury, by omission to object to evidence that would have been proper for their consideration, in case they failed to find the existence of any facts upon which the estoppel could rest. If such facts, in the opinion of the jury, were established, then it was their duty to disregard the evidence tending to disprove the possession of the wheat by the firm, for the reason that the firm was estopped from taking any such position by its own acts and declarations, upon the faith of which the plaintiff had acted. 25 N. Y. 595, *supra.* If, as must be assumed from the verdict, the fact of possession, as it was represented by defendants, cannot be disputed, then the evidence of a conversion was sufficient.

It was shown that plaintiff ordered the firm to sell the wheat on the 21st day of July, 1875; that it neglected and refused to make the sale, and has never in any way accounted therefor to the plaintiff. It is to be presumed that the property is still held by defendants, contrary to said expressed

wish and direction of plaintiff, and without any claim of right so to do. Such refusal to sell, and continued retention of the property, without lawful excuse, was equivalent to a conversion. It was an unauthorized exercise of control and dominion over plaintiff's property, wholly inconsistent with the special purpose for which alone the deféndants held its possession from the plaintiff, and was, therefore, a positive tortious act, rendering them liable therefor as for a conversion. *Laverty* v. *Snethen,* 68 N. Y. 522, and cases cited in the opinion therein.

As the measure of his damages for the conversion, plaintiff claimed to recover the value of the wheat at the time the sale was ordered and refused, less the amount of what charges and advances had theretofore been made thereon, with interest upon the balance from the time of the conversion; and this is what the jury allowed him. In this there was no error. The complaint avers that the value of the wheat at the time the defendants were directed to sell it, to wit, July 21, 1875, was the sum of $900, over and above all charges for interest or money advanced to plaintiff thereon, and storage for the same. In the answer, this allegation was only attempted to be traversed by a general denial. This was not enough to put it in issue, under the repeated rulings of this court, and such fact, therefore, stood admitted. *Lynd* v. *Picket,* 7 Minn. 128, (184;) *Dean* v. *Leonard,* 9 Minn. 176, (190;) *Pottgieser* v. *Dorn,* 16 Minn. 204.

This disposes of all the questions of any importance in the case, and as it appears that the court committed no error in its rulings upon the trial, and that the verdict is not against the evidence, the order granting a new trial was erroneous, and must be reversed.

Ordered accordingl