MASONIC TEMPLE ASSOCIATION OF MINNEAPOLIS *vs.* SEWELL P. CHANNELL.

June 2, 1890.

**Corporation—Written Stock-Subscription — Oral Condition.**—When a subscriber to the stock of a corporation is sued on his written subscription, it is incompetent to prove an oral condition to the subscription.

**Same—Action—Requirement that All the Stock be Subscribed.**—The statute (Gen. St. 1878, c. 34, § 4) does not abrogate the common-law rule that, where the charter or articles of a corporation, or the terms of subscription to its capital stock, do not provide otherwise, payment of a subscription cannot be required till the whole capital stock is subscribed.

**Same—Waiver of Requirement by Acts of Shareholder.**—But the subscriber may waive that defence. Acts done by him, as stockholder or director, which constitute a part of the business for which the corporation is formed, and which from their nature assume it to be ready for business, and evince a willingness to enter upon that business, with the stock already subscribed, will amount to a waiver.

**Same.**—Certain acts of defendant as a director *held* a waiver.

Appeal by defendant from an order of the district court for Hennepin county, refusing a new trial after a trial by *Lochren,* J., and judgment for $500 and interest ordered for plaintiff.

*Gilfillan, Belden & Willard,* for appellant.

*Ankeny & Merrill* and *Little & Nunn,* for respondent.

GILFILLAN, C. J.   The action is upon defendant's subscription to the capital stock of the plaintiff. Upon a trial without a jury, the court below ordered judgment for the plaintiff, and from an order denying defendant's motion for a new trial he appeals.

The appellant makes the points that the plaintiff never accepted his subscription, it having been made before the corporation was organized; that one of the calls or assessments upon the subscribers was not properly made, because it was ordered at a meeting of the directors at which there was not a quorum present; and that appellant had not due notice of four of the calls. Upon all these points the court found the facts against him, and the evidence sustains the findings.

v.43M—23

He also complains that the court below excluded evidence offered by him that, at the time of subscribing, he orally made it a condition that the corporation should incur no debt. As the contract of subscription was in writing, of course the evidence was incompetent.

The chief matter of defence was that the whole capital stock of the plaintiff has not been subscribed. No question is made that at the common law, when the charter or articles of incorporation, or terms of the subscription, make no different rule, payment of subscription to the capital stock of a corporation cannot be required until the whole amount of stock has been subscribed. There were solid reasons for the rule,—reasons based not only on considerations of public policy, but on the presumed understanding and intention of the subscriber to stock. The amount of capital stock of a corporation is presumed to be fixed at what the parties interested suppose will be required for the successful prosecution of the enterprise or business for which it is formed; and, while one might be willing to take stock if such amount is to be raised before the enterprise is to be entered upon, he might not be willing to take and pay for it, leaving it uncertain that the requisite amount will be raised. It is therefore implied in the contract of subscription, as a condition precedent to its being of force, that the entire amount of stock shall be subscribed for. Of course, if the articles of incorporation provide that payment of subscriptions may be called for before the whole stock is subscribed, that, as between the parties, is binding. We do not think the clause in Gen. St. 1878, c. 34, § 4, (being in the part of the chapter pursuant to which this plaintiff was organized,) "when articles are filed, recorded, and published as aforesaid, the persons named as corporators therein become a body corporate, and are authorized to proceed to carry into effect the objects set forth in said articles in accordance with the provisions of this title," was intended to abrogate, as between the corporation and the subscribers to its stock, the wholesome rule of the common law we have referred to. Whether it bars the right of the state to object to a corporation proceeding with its enterprise before its stock is fully subscribed for, need not be considered in this action.

It may be regretted that there has been any relaxation of that rule.

But it is so thoroughly established that a subscriber to stock may by his acts debar his right, when called upon to pay for his stock, to object on the ground that the entire stock has not been subscribed for, as to be no longer an open question. The appellant does not question it. The rule is stated in Cook, Stocks, § 181: "A subscriber may waive the defence that the full capital stock of the corporation has not been subscribed. . This waiver may be either express, or implied from the acts or declarations of the subscribers." The appellant claims that the waiver must amount to an estoppel; the respondent, that acts or declarations of a subscriber showing an intent not to object that the full stock has not been subscribed, are sufficient, although a technical estoppel may not be shown. Some of the cases cited use the word "waived," others, the word "estopped." An estoppel *in pais*, as the word is usually employed and applied, includes the fact that the party claiming the estoppel relied upon and acted upon the acts or declarations, so that he will be prejudiced if the other party is not held to them. We do not find that the cases referred to using the word "estoppel," and holding that the subscriber was or was not estopped, use the word in this sense. Thus, in *Cromford & High Peak Ry. Co.* v. *Lacey*, 3 Younge & J. 80, certain acts were held to estop the defendant, though it did not appear that either the corporation or other subscribers had in fact been influenced by his acts; the court only saying that others may have been thereby induced to subscribe. So, in *Hager* v. *Cleveland*, 36 Md. 476; *Garling* v. *Baechtel*, 41 Md. 305; *Schloss* v. *Montgomery Trade Co.*, 87 Ala. 411, (6 South. Rep. 360;) *Corwith* v. *Culver*, 69 Ill. 502; *Centre, etc., Turnpike Road Co.* v. *M'Conaby*, 16 Serg. & R. 140; *Clark* v. *Monongahela Navigation Co.*, 10 Watts, 364,—the courts, in stating what will estop the subscriber, or prevent his being heard to make the objection, refer only to his acts, and do not include the fact that they did influence others. If a technical estoppel were required to prevent a subscriber withdrawing his subscription on the ground that the full stock has not been subscribed, much fraud might be committed; for, if it must be shown that the corporation or some subscriber, of whom there may be many hundreds or even thousands, was in fact influenced by the acts of the subscriber who seeks to

withdraw, it might be impossible to prove the fact, even though it exist. The safer rule in such a case is that, if his acts are of such a character that either the corporation or subscribers may have been induced by them to act, and will be prejudiced if he be permitted to withdraw, he shall be held to have waived, or to be estopped to assert, the defence. It is immaterial which word is used, except, perhaps, for the sake of strict verbal accuracy.

There are a great many decisions determining what acts will and what will not prevent the subscriber making this defence. It would be unprofitable to refer to the cases in detail, for they are not entirely agreed; some cases holding certain acts to be sufficient, others holding similar acts insufficient. The general rule we deduce from all of them is that participation in acts done for perfecting the organization of the corporation, and setting it on its feet for business,—such as preparing and procuring the execution of the articles, procuring subscriptions to its stock, preparing by-laws for its government, and the like,—will not be regarded as a waiver of the defence, or as an estoppel against asserting it, for these are things proper, and to some extent necessary, to be done, although the full amount of stock be not subscribed; but that his acts as stockholder or director, the doing of which constitutes a part of the business for which the corporation is formed, and which from their nature assume it to be ready for that business, and evince a willingness to enter upon that business, with the stock already subscribed, will be sufficient.

Tested by this rule, the defendant had waived his right to object that the whole amount of stock was not subscribed. The enterprise for which the corporation was formed was the erection and maintenance of a building in the city of Minneapolis. Defendant was one of its first board of directors. He was present at the first meetings of the board, and took an active part in the matter of selecting a site for the building, and ascertaining upon what terms a site could be purchased, and was chairman of a committee appointed for that purpose, reported in favor of a particular site, and voted on a motion in favor of that site,—voted upon, though against, a motion to adopt another site. It was not until the board had determined upon the latter site that he made any objection that the stock was not all sub-

scribed. Up to that time he was willing the directors should proceed with that part of the business of the corporation. The articles of incorporation did not provide for constructing a building on a designated site, if it could be obtained, in which case the ascertaining if it could be got might be deemed preliminary to entering on the business of the corporation; for its going on would depend on that. The articles contemplated the erection of the building on any site that the corporation might select and purchase. The selection of the site was part of the business for which it was organized,—as much so as the purchase after the selection, or constructing the building after the purchase.

Order affirmed.