# CHESTER W. JOHNSON v. I. C. CHRISTLIEB.[1]

June 21, 1929.

No. 27,222.

*Chester W. Johnson,* pro se.

*Herbert H. Hoar, F. L. Cliff* and *A. J. Rockne,* for respondent.

[1]Reported in 225 N. W. 927.

STONE, J.

Defendant had a verdict in this action for an assessment duly levied against him as a stockholder in a Minnesota corporation in process of liquidation, and plaintiff, the receiver, appeals from an order denying his alternative motion for judgment notwithstanding the verdict or a new trial.

Stating them as favorably for defendant as the record allows, the facts are as follows: In 1902 there was organized under the laws of this state a corporation under the name of "United States Installment Realty Company" for the purpose of conducting a general investment business and the sale of contracts, mortgages and other securities to the public. Its business, for a time at least, was successful and extensive, and in 1915 its standing high. Long before 1915 this company had become known and commonly referred to, not only in its own official circle and among its patrons but also in the local business community generally, by the abbreviated name "U. S. I. Realty Company." This corporation we shall refer to as company No. 1 for convenience in distinguishing it from the newer and distinct corporation next to be referred to.

In May of 1915 there was organized, again under Minnesota statutes, a new company which will be referred to herein as company No. 2. It was organized by the three gentlemen longest and most prominently connected with the company No. 1, Evans, Reynolds and Larimore. They owned in equal shares all the stock of company No. 1. Their design was to sell it to company No. 2 at an unconscionable profit to themselves and under such circumstances that company No. 2 was doomed from the first to failure. The second company was organized under the name of "U. S. I. Realty Company," identical with the abbreviated, then current and common designation of company No. 1. Upon the organization of company No. 2, the assets and business of company No. 1 were transferred to it by a contract, the details of which need not be examined. It called for the payment of $300,000 by company No. 2. The whole scheme is assumed for present purposes to have been conceived in fraud, and that company No. 2 and its innocent stockholders, of whom defendant claims to be one, were victimized accordingly.

The promoters immediately began to sell stock in company No. 2. Defendant subscribed for and became the owner, according to the records, of 50 shares, the certificate for the first seven shares bearing date of December 13, 1917. The company went into liquidation, and the receiver was appointed in December, 1923, when defendant had been a stockholder more than five years. July 25, 1918, defendant was appointed a director, and at the annual stockholders meeting of company No. 2, held April 24, 1919, which he attended, was elected to succeed himself. He remained on the board continuously until the receiver was appointed. As a stockholder, he not only received dividends as they were declared on his stock but was a regular attendant at the annual stockholders' meetings. At several of them he was a member of the credentials committee, determining what stockholders were present and entitled to vote either in person or by proxy. As a director, he was equally faithful in his attendance at meetings of the board, actively participating in its deliberations and conclusions. He received the ten dollars per diem and expenses allowed a director for attendance at meetings of the board.

Counsel for defendant question not only the accuracy but also the authenticity of the minutes of the meetings of stockholders and directors of company No. 2 received in evidence. But it is noteworthy that notwithstanding his necessary possession generally of knowledge of what was being done both by stockholders and directors, defendant did not at the trial offer in evidence any other records or suggest that others were in existence. Those in evidence seem to be those of the stockholders' and directors' meetings of company No. 2 during most if not all of the time from its organization to its insolvency. While at times the distinction is not made, it is drawn between the two companies repeatedly in the minutes and it is made clear that they were distinct corporate entities.

The gist of the defense is the plea that defendant was fraudulently induced to subscribe and pay for his stock in company No. 2 by the wilfully false representations of its promoters and stock salesmen that the stock was that of the old, established and profitable company No. 1; and that, without laches or negligence on his part,

he failed to discover the fraud perpetrated upon him until after the insolvency of company No. 2. The theory is not that defendant has rescinded or is entitled to rescind now because of the fraud, but that, inasmuch as the stock subscriptions were by him intended and supposed to be for the stock of company No. 1 when in fact they were for stock in company No. 2, there was such a mistake of fact as to the identity of the party with whom he was contracting that in consequence there was no contract at all and never has been any. The concluding element of the argument is that, there having been no contract to start with, or at the most a void contract, it could not be ratified. It is for such reasons that defendant insists he is not and never was a stockholder in company No. 2.

■ It would be interesting to consider whether under any circumstances a director of a corporation may repudiate his position as director and his liability as stockholder by asserting ignorance of the identity of the corporation. But that point has not been argued at the bar, and so we pass it for one which is presented by the argument. Plaintiff moved for a directed verdict upon the ground, among others, that defendant was estopped to deny that he was a stockholder. Failing in that, he requested instructions submitting the issue of estoppel to the jury. We have concluded that the motion for a directed verdict should have been granted.

The duties of the directors of a business corporation, one conducted for the profit of its members, need not be elaborated upon. By statute they are charged with the management. G. S. 1923 (2 Mason, 1927) § 7458. The least of the duties the law imposes upon them is that of knowing what corporation they are managing and representing in its dealing with the public. In the case of banks, a director commits a crime whenever he permits deposits to be received when the bank is insolvent and he knows or has good reason to know that fact [G. S. 1923 (2 Mason, 1927) § 10407] and when he gives to the superintendent of banks materially false and misleading information. [G. S. 1923 (1 Mason, 1927) § 5325; State v. Sharp, 121 Minn. 381, 141 N. W. 526.] One guilty of either offense is not excused by the absence of guilty knowledge or

intent and his consequent moral innocence. The duty is imposed and the failure to perform it is not only a violation of law but a crime.

With respect to ordinary business corporations, statutory law has not gone so far. But "ignorance on the part of the directors of any fact which it was their duty to know, and which they would have known if they had exercised ordinary care and diligence in the performance of their duty, cannot be set up by them to escape liability. * * * Directors cannot 'shut their eyes to what is going on around them.' " 4 Fletcher, Corp. 3716, 3717. In applying that general rule, it has been held that a director is bound to know the provisions of the corporate charter (Van Etten v. Eaton, 19 Mich. 187), the contents of corporate books and records kept under the immediate authority and the direction of the directors which reasonable inspection or attention to the business would have disclosed (Hanover Nat. Bank v. American D. & T. Co. 148 N. Y. 612, 43 N. E. 72, 51 A. S. R. 721; Pacific V. & P. Works v. Smith, 152 Cal. 507, 93 P. 85; Merchants Bank v. Rudolf, 5 Neb. 527; Porter v. Hallet & Carey Co. 40 S. D. 136, 166 N. W. 525), and even of insolvency (Pender v. Speight, 159 N. C. 612, 75 S. E. 851). The conclusion therefore is irresistible that one in the position of defendant, who not only has been active as a stockholder but also as a director, is so charged with knowledge of the identity of the corporation that he is estopped to deny it.

■ Ordinarily there can be no estoppel unless the party sought to be estopped had knowledge of the facts at the time of the representation, concealment or other conduct assigned as creating an estoppel. 2 Dunnell, Minn. Dig. (2 ed.) § 3193. But culpable negligence in not knowing the facts may be equivalent to actual knowledge of them. And in any case knowledge by the party estopped is sufficiently shown if the circumstances are such that knowledge of the truth is necessarily imputed to him. Coleman v. Pearce, 26 Minn. 123, 1 N. W. 846; Dimond v. Manheim, 61 Minn. 178, 63 N. W. 495; Theobald v. Hopkins, 93 Minn. 253, 101 N. W. 170; Macomber v. Kinney, 114 Minn. 146, 128 N. W. 1001, 130

N. W. 851. In Coleman v. Pearce, 26 Minn. 123, 129, 1 N. W. 846, a partner attempted to escape an estoppel "for the reason that he had been himself deceived by his partner * * * and actually believed in the truth of the statements when he made them." That was held "of no avail as a defense" because the position of the defendant "as a copartner gave him the right to know and the means of ascertaining the actual facts in respect to all matters connected with the partnership, and it imposed upon him the duty of knowing the exact truth as to any statement made by him concerning its transactions to any customer dealing with the firm, and entitled to the information."

The determinative element so stressed is present here in all its force. The minutes of the meetings of the directors of company No. 2, at which defendant was present and participating, show repeated action, notably the approval of the forms of certain investment contracts being offered for sale to the public, with respect to which it is stating the least of his obligations to say that defendant was charged with knowledge of the identity of the company of which he was one of the managers and with which he was inviting the public to deal. So far as the cases have come to our attention, this is the first one presenting the novel proposition that one may long serve as a director of a corporation, participate as such in its management and the conduct of important transactions out of which claims arise in favor of others, and then upon the company's insolvency escape responsibility by averring that he did not even know what corporation he was managing. Almost as well might a husband, after four or five years of matrimonial cohabitation and the death of his wife, upon being sued for necessaries furnished her, defend on the ground that someone had deceived him into mating with the wrong woman and that he remained ignorant of her identity until after her death.

If defendant cannot deny that he was a director of company No. 2, he cannot deny that he was the owner of the stock which qualified him to become such and which was recorded as his upon the corporate records made and kept under the authority and control of

the board of which he was an active member. So far as the creditors are concerned, who are represented by plaintiff as receiver, the activities of defendant on the one hand as stockholder and on the other as director cannot be segregated. They must be considered together. So considered and for the reasons stated, they estop defendant as matter of law from denying that he was a stockholder. The circumstances making for estoppel are stronger even than those in Masonic Temple Assn. v. Channell, 43 Minn. 353, 45 N. W. 716, and Zander v. Schackel, 161 Minn. 116, 201 N. W. 308.

In consequence the order appealed from is reversed with directions to enter judgment for plaintiff notwithstanding the verdict.

DIBELL, J. took no part.