CHESTER W. JOHNSON v. A. M. FREID.[1]

October 10, 1930.

No. 27,990.

[1]Reported in 232 N. W. 519.

*Chester W. Johnson* and *Dan J. O'Connell,* for appellant.

*Herbert H. Hoar* and *Catherwood, Hughes & Alderson,* for respondent.

DIBELL, J.

This is an action to recover $1,100 upon the constitutional double liability of the defendant as a stockholder to the extent of 11 shares in the U. S. I. Realty Company, a Minnesota corporation. There was a verdict for the defendant. The plaintiff moved in the alternative for judgment notwithstanding the verdict or for a new trial and appeals from the order denying his motion.

On January 29, 1926, the district court of Hennepin county, pursuant to G. S. 1923, § 8025, levied an assessment of 100 per cent upon the stock of all the stockholders of the U. S. I. Realty Company, of which the plaintiff is the receiver. There was an affirmance in Webster v. U. S. I. Realty Co. 170 Minn. 360, 212 N. W. 806.

The constitution, art. 10, § 3, provides:

"Each stockholder in any corporation, excepting those organized for the purpose of carrying on any kind of manufacturing or mechanical business, shall be liable to the amount of stock held or owned by him."

This is the so-called stockholder's constitutional double liability. Minnesota is almost alone in imposing it. 7 Minn. L. Rev. 79. Its hardship was recognized in MacLaren v. Wold, 168 Minn. 234, 210

N. W. 29, 55 A. L. R. 321, where the stockholders of a co-operative association were subjected to grievous liability without much apparent good to others; but all this does not permit anything but a fair finding upon the question whether one is in fact a stockholder.

The receiver may enforce the assessment by action. G. S. 1923 (2 Mason, 1927) § 8028. The question is whether the defendant holds or owns stock in the U. S. I. Realty Company. The plaintiff claims that he owns stock to the extent of $1,100. The defendant claims that he owns none.

Corporate books and records are competent evidence of stock ownership. Holland v. Duluth I. M. & D. Co. 65 Minn. 324, 68 N. W. 50, 60 A. S. R. 480; Randall Printing Co. v. Sanitas M. W. Co. 120 Minn. 268, 139 N. W. 606, 43 L.R.A.(N.S.) 706; Lebens v. Nelson, 148 Minn. 240, 181 N. W. 350; Ohman v. Lee, 149 Minn. 451, 184 N. W. 41. The books and records of the U. S. I. Realty Company evidenced ownership in defendant of 11 shares. But one cannot be made a stockholder without his consent. Ohman v. Lee, 149 Minn. 451, 184 N. W. 41. In Bartlett v. Stephens, 137 Minn. 213, 215, 163 N. W. 288, 289, it was said:

"The usual evidence of who are stockholders in a corporation is the stock record of the corporation. This is prima facie evidence, and one whose name appears on the corporate records as a stockholder is prima facie subject to the liabilities of a stockholder. The corporation record is not conclusive evidence. This would not do, for if it were held to be conclusive, a person might be held bound as a stockholder through the error or connivance of others and without his knowledge."

■ No question is made but that there is evidence in the record that the defendant was a stockholder in the U. S. I. Realty Company. There is evidence, to which we now call attention, that the defendant did not enter into a subscription contract with that corporation, and it sustains the jury's finding that he did not.

The U. S. Installment Realty Company was incorporated under the laws of Minnesota on July 15, 1902, with a capital stock of $25,000. The U. S. I. Realty Company was incorporated under the

laws of Minnesota on May 4, 1915, with a capital stock of $1,000,000. We sometimes refer to the first company as No. 1 and to the second as No. 2.

The stock of company No. 1, $25,000, was owned by Evans, Larimore and Reynolds. The company was engaged in the sale of bonds and real estate. Its name was frequently abbreviated to U. S. I. Realty Company, and other abbreviations were used. Company No. 2 was capitalized at $1,000,000. It had no bonds. It sold its stock to the amount of $600,000. Letterheads of No. 1 frequently were signed in the shorter name of No. 2 before and after the latter was incorporated. The officers of the two corporations were the same. They occupied the same offices. It would seem impossible for either to hold a corporate meeting of the directors at the same time as the other; and one dealing with either at such a meeting would need to assure himself of its identity; and the two corporations hardly could treat with each other in an adversary attitude.

The literature of company No. 2 soliciting subscriptions represented it as being capitalized in 1902, which was the date of incorporation of No. 1. It was represented that No. 2 had returned to its bondholders over $1,000,000. It had no bondholders. No. 1 had.

On November 1, 1910, Freid invested in a bond of No. 1. On May 13, 1916, this was traded, so it is claimed, for five shares of stock in No. 2, and later Freid took six shares more. He did surrender his bond but thought he was getting stock in the same company. Under date of April 1, 1916, a circular letter was sent on the letterhead of No. 1 in which it was stated:

"We now give you as a bond holder an opportunity to join us as one of the owners of the company, in order that you may receive your full share of the profits. We offer you as a special proposition one share of the stock and one unit for $150.00 the price at which the stock alone is now selling. You may pay for the same either in cash or in payments as on your bond, the least monthly payment being $3.00."

The circular was signed in the name of the U. S. I. Realty Company and by one who was president of both No. 1 and No. 2. It

stated that the last annual dividend was four and one-half per cent and that it was expected to be increased. The oil unit of $10 going with the stock, the details of which need not be discussed, was something appertaining to No. 1 and not at all to No. 2; and it was agreed that in any event the face amount would be returned at maturity, which was ten years. It was stated that this proposition was "given to our bond holders only and is for *one* share of stock *only* as an inducement to have every one of our bond holders owning an interest in our company, and will be withdrawn May 15, 1916."

Another circular letter was sent under date of May 4, 1916, and announced the election of additional directors, but the directors mentioned were retained. It also announced a semi-annual dividend of five per cent and expressed hope of doubling it.

The defendant understood that he was dealing with No. 1, which was an apparently prosperous company at that time. No. 1 was itself inducing or allowing No. 2 to induce the defendant to buy the stock on the supposition that it was the stock of No. 1 and that he was dealing with No. 1. The defendant sent a number of checks to No. 1 payable to it for its stock. They were received and indorsed by it and deposited in bank.

To make a purchase it was necessary that there be an expressed or manifested mutual assent of the parties. There was in the mind of the defendant a mistake as to identity and a mistake as to the stock consequent on the mistake as to identity. The finding that the defendant did not become a stockholder of No. 1 is sustained.

█ The plaintiff claims that the defendant, by allowing his name to appear on the books of the company for so long a time as stockholder, is estopped to deny that he is the owner. One who by mistake becomes the apparent owner of corporate stock may be estopped to assert that he is not. The case before us is not a case of rescission for fraud nor a case of rescission for mistake. The defendant claims that he never made a contract with the U. S. I. Realty Company and is not the owner and should be left alone. He is not asking affirmative relief, though one who through mistake has entered into

a contract in form may have relief in equity by way of rescission. The defendant might have brought an action of rescission.

■ Upon the facts the question of estoppel gives us some concern. If it had been submitted to the jury and the jury had found under appropriate instructions that there was not an estoppel we would have no trouble.

Upon full consideration we conclude that the court's refusal to submit the question should be sustained.

The defendant was a station agent of the Milwaukee road at Adams in Mower county in the southern part of the state. He was there some 19 years. He had been a station agent about all his active life. He did not know of the existence of No. 2 until its bankruptcy in 1923, unless the circulars, deceptive in nature, or the receipt of dividends bound him. These circulars and correspondence came on the letterheads of No. 1. They referred to stock which No. 1 was going to have its bondholders take so that they would be interested in the corporation. There are in evidence 13 checks which were intended for payment of stock, all apparently received by No. 1, and all but one made by Freid to No. 1, and indorsed in its name and deposited in bank. There is trouble in finding that No. 1 and No. 2 were working otherwise than in wrongful conjunction for the purpose of getting their bondholders into company No. 2 with the thought that they were getting into No. 1.

It is not necessary to find fraud, and fraud was not submitted by the court. Freid did not attend the meetings of No. 2 and did not participate in its affairs. The case is distinguished from Johnson v. Christlieb, 178 Minn. 9, 225 N. W. 927, where the one estopped was a director in No. 2 for a number of years and active in its management, and from other similar cases. We hold as a matter of law that the defendant did not know of company No. 2 until 1923, when bankruptcy intervened and the rights of creditors attached; and that he is not estopped from asserting that he is not a stockholder. The case was argued and is briefed at great length; but we feel that a further discussion or review of the cases would not be wise. We have examined every phase of the controversy. Necessarily there can be but one just result.

Order affirmed.