STATE OF MINNESOTA v. BANK OF NEW ENGLAND and Others.[1]

December 8, 1897.

Nos. 10,851—(28).

**Insolvent Bank—Liability of Stockholders—Holding Stock as Security—G. S. 1894, § 2501.**

Under G. S. 1894, § 2501, the stockholder of a bank or banking corporation is individually liable in an amount equal to double the amount of stock standing on the books of the corporation in his name and held by him, as collateral security for a debt, for all the debts of such bank, during the time he so holds said stock; and this liability continues for one year after any transfer or sale of such stock by the stockholder, if the bank becomes insolvent and suspends payment within one year after such sale or transfer.

Upon the application of the state of Minnesota, one of its creditors, a receiver for the insolvent Bank of New England was ap-

[1] Reported in 73 N. W. 153.

pointed in December, 1893, by the district court for Hennepin county. In 1895 an order was made allowing one J. A. Hanson, on behalf of the creditors of the bank, to intervene in the receivership action for the purpose of enforcing the statutory liability of the stockholders, and he filed a supplemental complaint against the several stockholders. From a judgment entered pursuant to the findings and order of Elliott, J., John F. Calhoun appealed. Affirmed.

*Bartleson & Paul*, for appellant.

One who takes stock in a corporation as collateral security for a debt, when the stock stands in the name of the debtor and is not transferred to the creditor on the books of the company, does not become liable as a stockholder, but the liability remains in the pledgor. 3 Thompson, Corp. § 3213, and authorities cited. One who thus accepts stock as collateral security, and causes it to be transferred to himself on the books of the company, incurs all the liability of a stockholder. Cook, Stockh. (2d Ed.) § 247, and authorities cited. Pullman v. Upton, 96 U. S. 328; National Bank v. Case, 99 U. S. 628. One who accepts a certificate of stock issued directly by a corporation, upon the agreement that it is to be held only as collateral security, is not thereby rendered liable as a stockholder either to the company or its creditors. Burgess v. Seligman, 107 U. S. 20; Union v. Seligman, 92 Mo. 635; Griswold v. Seligman, 72 Mo. 110.

*C. H. Childs* and *W. S. Dwinnell*, for respondent.

Stockholders are, and necessarily must be, those who hold the evidence that they are the owners of the stock—they are called the stock holders and not the stock owners—and they are generally those who appear upon the transfer books of the company to be stockholders. Rosevelt v. Brown, 11 N. Y. 148, 151. As a stockholder Calhoun was liable for the debts of the bank. G. S. 1894, § 2501; Harper v. Carroll, 66 Minn. 487; Olson v. State, 67 Minn. 267; Dunn v. State, 59 Minn. 221. He is not relieved from his liability as a stockholder because he held the certificate of stock in question as collateral security for a debt. Harper v. Carroll, supra; Adderly v. Storm, 6 Hill. 624; Rosevelt v. Brown, supra; In re

Empire, 18 N. Y. 199; McGruder v. Colston, 44 Md. 349; Wheelock v. Kost, 77 Ill. 296; Hale v. Walker, 31 Iowa, 344; Pullman v. Upton, 96 U. S. 328; National Bank v. Case, 99 U. S. 628; Thompson, Stockh. § 223. His denial of ownership is inconsistent with the representation he has made. National Bank v. Case, supra.

BUCK, J.

J. A. Hanson, as intervenor and as plaintiff, in his own behalf and in behalf of numerous other creditors of the defendant bank, brought this suit against the stockholders thereof to enforce their statutory liability.

The Bank of New England was incorporated under the laws of this state in the month of January, 1892, with a capital of $50,000. In June, 1892, the stockholders voted to increase the capital stock to $100,000, and it is a part of this increased capital stock that was claimed to have been held by the defendant Calhoun. There was no dispute but what the bank was hopelessly insolvent and suspended payment on June 26, 1893, and made a general assignment of all its property, under the insolvency laws of this state, on July 6, 1893, and ever since has been insolvent. The main facts as to this claim and Calhoun's liability are embraced in the finding of the trial court as follows:

"The court further finds that certificate No. 98, for fifty shares of the capital stock of said bank hereinbefore found to have been issued to J. Frank Calhoun, was made out in the name of said Calhoun and dated the 1st day of July, 1892; that said certificate was not delivered to said Calhoun until the 14th day of September, 1892, and probably was not actually issued until about that time, at which time A. J. Blethen, who was then president of the bank and manager of its business, requested a loan of $4,500 from said Calhoun, and agreed to secure said loan with a certificate of the stock of the Bank of New England of the par value of $5,000; that on said day said Calhoun made said loan to said Blethen, and said Blethen thereupon executed his note for $4,500, payable to said Calhoun, and at the same time delivered to him said stock certificate No. 98, made out in said Calhoun's name and bearing date July 2nd, 1892, as aforesaid; that on the 23d of November, 1892, said Blethen paid said note of $4,500 and said Calhoun thereupon surrendered to him said certificate No. 98, the same having been indorsed in blank by him, and said certificate was returned to said bank and canceled; that during said time from the 14th of September to the 23d day

of November, 1892, said Calhoun was in possession of said certificate of stock, and had knowledge of its recitals and contents, but he did not know that the same had been issued as a part of the increased stock of said bank; that he never subscribed for nor took said stock with knowledge that the same was a part of the increased stock of said bank, nor for any other purpose than as collateral security for the payment of said note."

Under these facts, the court found, as a conclusion of law, that Calhoun became and was a stockholder, and liable as such, and the only question presented is whether, upon these facts, he was a stockholder within the meaning of the statute.

G. S. 1894, § 2501, in part, reads as follows:

"The stockholders in each bank shall be individually liable in an amount equal to double the amount of stock owned by them for all the debts of such bank, and such individual liability shall continue for one year after any transfer or sale of stock by any stockholder or stockholders."

Within the time fixed by the statute imposing this liability upon stockholders, there were fifty shares of the stock in the defendant bank standing in Calhoun's name upon the books of the bank; and if, during such time, he was the actual owner thereof, he was liable for the debts of the bank, under the terms of the statute above quoted, if the bank was then insolvent. Nor is he relieved from this liability as a stockholder because he held the certificate of stock in question as collateral security for a debt. Thomp. Liab. Stockh. § 223, citing numerous authorities to sustain this position, says:

"The reason why the courts so hold, briefly, is that a man cannot become the legal owner of stock, receive dividends, vote at elections, and enjoy all other rights appertaining to the ownership of it, without shouldering the liabilities attaching to such a position. Another good reason is that he will not be suffered to hold himself out to the public as the owner of stock, and afterwards deny that relation. Besides, if creditors were compelled to look beyond the legal title, they could never know against whom to proceed, and it would embarrass them in the pursuit of their rights to compel them to inquire into equities which might exist between the stockholder and some third person." See, also, Pullman v. Upton, 96 U. S. 328; National Bank v. Case, 99 U. S. 628.

70 M.—26

Even if these things were not done by Calhoun, he had the rights appertaining to the ownership of the stock, and the right, as a stockholder, to demand or accept the benefits should impose upon him the duty of shouldering the burdens. That he accepted the stock, and used it, is unquestioned. It is not a question of whether he paid for the stock, and had it issued in his own name, with the intent to become a stockholder in the bank, but whether the liability did not accrue when he permitted himself to be held out to the public as a stockholder, by accepting the stock in his own name, and allowing it so to stand upon the books of the corporation. Parties dealing with corporations have a right to assume that one representing himself to the world as a stockholder in such corporation, by permitting his name to stand on its books as such, must take the responsibilities of the situation.

If the business of the corporation had been profitable, he would have been entitled to have enjoyed the same; but when the business ceases to be profitable, and the ordinary assets of the bank are insufficient to meet the legal and just demands of creditors, he is bound to respond to the liability imposed by statute. The opinion in the case of Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, cited by appellant as holding to the doctrine that one who accepts a certificate of stock issued directly upon the agreement that it is to be held only as collateral security is not thereby rendered liable as a stockholder either to the company or its creditors, is based upon the statute of the state of Missouri, and is not in point in this case.

Nor is there any merit in the contention of appellant that the stock in question was reissued to Davidson and Olson prior to the date of its surrender by the appellant.

The question of rights or liability between the transferror and transferees is not in issue here, and the rights of creditors cannot be affected by any discrepancy between the dates of cancellation and reissue of the certificates of stock. The certificate was delivered to Calhoun September 14, 1892, made out in his name, although dated July 2, 1892; and he kept possession thereof until November 23, 1892, when he surrendered it, and, in less than a year after it was delivered to him, the bank became hopelessly insolvent, and thus the statutory liability sought to be enforced against him

accrued within the time fixed by law rendering him liable as a stockholder.

Judgment affirmed.