## CHARLES M. WAY v. FRED E. BARNEY.[1]

November 20, 1914.

Nos. 18,782—(44).

**Liability of stockholder — stock held as collateral security.**
    Evidence in an action to enforce a stockholder's constitutional liability

[1] Reported in 149 N. W. 462, 646.

---

Note.—The authorities on the question as to the liability of a pledgee of corporate stock are gathered in notes in 36 L.R.A. 139 and 19 L.R.A.(N.S.) 249.

against one who appeared upon an insolvent local corporation's stock books as a general owner of stock, *held* to sustain a finding that the failure of the corporation's records to show that the stock was issued to and held by defendant as collateral security for an advance made by a third person was not due to the negligence or fraud of the corporation but to his own negligence, wherefore he was estopped, as against creditors, to deny his liability as a stockholder.

Action in the district court for Hennepin county by the receiver of the Winslow Furniture & Carpet Co. to recover $5,000 upon defendant's constitutional liability as a stockholder in that company. The answer among other matters denied that defendant ever subscribed for, acquired, or became either the owner or holder of shares of stock in that company and set up the facts stated in the opinion. The case was tried before Steele, J., who made findings and ordered judgment in favor of plaintiff for the amount demanded. From an order denying his motion to amend the findings or for a new trial, defendant appealed. Affirmed.

*Mercer, Swan & Stinchfield,* for appellant.

*James E. Trask* and *John M. Bradford,* for respondent.

PHILIP E. BROWN, J.

This is an action to enforce against defendant constitutional liability as a stockholder of a bankrupt local corporation. Plaintiff prevailed. Defendant appealed from an order refusing amendments of the findings and a new trial.

The complaint was sustained on demurrer in 116 Minn. 285, 133 N. W. 801, 38 L.R.A.(N.S.) 648, Ann. Cas. 1913A, 719, where it was held, among other things, that the discharge of a corporation under the Federal Bankruptcy Act does not discharge or extinguish the constitutional liability of its stockholders for the payment of its debts.

Plaintiff claimed that on April 19, 1905, defendant subscribed for and became the owner of 50 shares of the capital stock of the Winslow Furniture & Carpet Co., the bankrupt corporation, of the par value of $5,000, issued in his name, an entry whereof was then made upon the stock books of the company, and that such ownership

continued so to appear until its bankruptcy. Defendant denied subscription for stock in or ever having been a stockholder of the corporation. He admitted the issuance, and delivery, of the shares to him in his name on the date stated, but asserted that he merely held the title in trust for the Winslow Co., as collateral security for a loan and credit aggregating $5,000, made to it by the Salisbury & Satterlee Co., another corporation, pursuant to the terms of a prior agreement between these companies, to which he was not a party; further, that the issuance of this stock and the entry of his name upon the records as a stockholder, without indicating his true relation thereto, was a fraudulent or negligent violation of the corporation's duty, the agreement mentioned, and his rights in the premises. He claimed also to have surrendered the stock in compliance with this agreement while the Winslow Co. was a going concern.

Little dispute exists as to the facts. In April, 1905, the Winslow Co., which had theretofore been a retail furniture dealer in St. Paul, contemplated opening a branch in Minneapolis, and with that end in view conferred, through Mr. Winslow, its president, with Messrs. Salisbury & Satterlee, president and vice president of a company then engaged, under that name, in wholesaling furniture in the latter city, regarding the purchase by it of shares of the former's capital stock. What occurred, the agreement entered into, and how interest was paid on the advances subsequently made, will best be understood by stating the testimony of the last-named officers as witnesses for defendant. Mr. Satterlee, after testifying that Mr. Winslow advised him of the contemplated establishment of the branch, continued:

"And that he wanted to know if he couldn't interest us in taking some financial interest in the business; that he had had some kind of proposition from other people and wanted us to take stock. We told him we wouldn't take stock, couldn't take it and wouldn't. We conversed along that line for some time and then we suggested, I suggested, or Mr. Winslow, in our conversation, it came to this arrangement, that we would let them have approximately $2,500 worth of goods and $2,500 in cash and take stock in the Winslow & Ruff Furniture Co. as security, collateral security, this stock to be issued to Mr. Barney. It was first suggested by Mr. Winslow

to issue it to a man in our employ, but we didn't want to have any-
thing to do with it for the reason that with the other trade in the
city here it isn't advisable or desirable to have them feel that you
are backing competition coming into the city. So we suggested Mr.
Barney. He didn't know Mr. Barney, never had heard of him, and
said if it was satisfactory to us it would be to him. So we made
the deal on that basis."

Mr. Salisbury testified:

"Through Mr. Satterlee I learned Mr. Winslow desired to open
a branch in Minneapolis and with Mr. Satterlee had several con-
ferences with Mr. Winslow. It was his desire, as I recollect it,
that we should take a certain amount of stock, $5,000 was the ulti-
mate sum that we arrived at as necessary for us to participate in
his patronage, to receive his patronage for our line of goods. I was
not in favor, nor was Mr. Satterlee at our conferences, of taking
stock in the Winslow Furniture & Carpet Co. or in the Winslow
& Ruff Furniture Co., as it was at that time. And I presume there
was suggestions made along several lines; as I remember it we
were trying to reach a point where we could agree upon the con-
ditions under which we could give them $5,000, a loan of $5,000 in
credit, partly goods and partly cash. And it was my understand-
ing that when the deal was finally consummated that Mr. Winslow
was to issue $5,000 worth of stock to Fred E. Barney which he
was to hold to secure us for the payment of the credit which we gave
him; that he was to pay us 8 per cent interest, not on the $5,000,
but on the cash as soon as it was invested or turned over, and upon
the monthly balances of goods. The interest was paid for at least
two years if not more. And the time of payment was not definitely
settled or promised or understood, except that the success of the
business from Mr. Winslow's standpoint would undoubtedly allow
him to take up the credit or the loan within two or three years."

After the making of this arrangement defendant, at the request
of the Salisbury Co., consented to take the stock in his name, and,
likewise, on April 19, 1905, attended a stockholders' meeting of
the Winslow Co., at which a resolution was passed to issue the
shares to him, which was done, nothing being said about their be-

ing collateral. At the same meeting defendant was elected a director of the corporation at Mr. Winslow's request. The original certificate of shares was not offered in evidence, but the stub of the stock book was. It reads as follows:

Certificate
No. 8
For 50 shares
Issued to
Fred E. Barney.
Dated April 19, 1905.
From Whom Transferred.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Dated. . . . . . . . . . . . . . . . . . . . . . .190. . . . . . . .

| No. Original | No. Original | No. of Shares |
| Certificate | Shares | Transferred |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Received Certificate No. . . . . . . . . . . . . .
For . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Shares
this . . . . . . . . . . . . . . day of . . . . . . . . . . . . . . . . . . . .190. . . . . . . .

The within certificate, No. 8, is one of a series, aggregating $25,-000 of preferred stock, and is entitled to the following preference, viz.: To be paid an annual cumulative dividend, on the date of the regular annual meeting of the corporation, of eight per cent, and in case of the winding up of said corporation, said preferred stock shall be paid in full before any common stock shall receive a dividend. The right to redeem the same at any time after five years is reserved.

"Winslow & Ruff Furniture & Carpet Company.
"By Irving M. Winslow, Pres.
"By Alfred Mortenson, Sec."

This was substantially in accord with the resolution authorizing its issuance. Later defendant executed a proxy and the shares were voted thereunder at the annual meeting of the company held in February, 1906. The company's articles of incorporation provided

that its government should be vested in a board of three directors, to be elected annually from the stockholders, but defendant was so chosen, with four others. The Salisbury Co. advanced the credit and loan as agreed. In 1908 the Winslow Co. was adjudged bankrupt. Several months prior thereto the Salisbury Co. obtained the stock certificate from defendant, who had retained it in his possession until then, and exchanged it for a note of the Winslow Co.; but no record of this transaction was entered upon the stock books. The Winslow Co. contracted debts after April 19, 1905, which remain unpaid, and for which claims were allowed in the sequestration action subsequently brought against it. The court found the ultimate facts substantially as stated; in effect determined defendant's claim of fraudulent or negligent violation of the duty owing defendant in issuing the stock without indicating its collaterality, unfounded, and concluded that defendant held himself out to creditors as the owner of. the shares, and as to them was estopped from denying ownership. Defendant challenges this determination and conclusion as being unsupported by either the evidence or findings.

In this jurisdiction, in harmony with the great weight of authority, one to whom corporate stock has been transferred as collateral security, but who appears upon the books of the corporation as its general owner, is liable as a stockholder for corporate debts. Marshall Field & Co. v. Evans, Johnson, Sloane & Co. 106 Minn. 85, 118 N. W. 55, 19 L.R.A.(N.S.) 249; note 121 Am. St. 197. But the rule is otherwise when the holder's true relation to the stock appears of record (Marshall Field & Co. v. Evans, Johnson, Sloane & Co. supra), or where absence of such disclosure is not due to his failure to exercise reasonable care. Hunt v. Seeger, 91 Minn. 264, 98 N. W. 91. Subsequently to the issue of the stock here in question, the rule stated in the Field case was, to some extent, incorporated in our statutes. See R. L. 1905, § 2863.

At the outset it is to be remembered that we are not dealing with a case where any claim is made that defendant either requested or suggested any notation as to the stock being issued as collateral; and, further, that the root of the rule of estoppel in such cases is protection of creditors, and although stock be issued by a corpora-

tion directly to a creditor as collateral security, so that he does not become liable to the corporation for the price of the stock as a subscriber therefor, nevertheless, if he fails to do all that can be expected or required of a reasonably careful and prudent business man in the matter of seeing to it that the character of his holding appear of record, he will not be allowed to deny his liability to creditors not advised to the contrary by the stock books. Hamilton v. Levison, 198 Fed. 444, 446, affirmed 204 Fed. 72, 122 C. C. A. 386; State v. Bank of New England, 70 Minn. 398, 402, 73 N. W. 153, 68 Am. St. 538. Since, therefore, one acting as a dummy for a creditor can stand in no better position than the creditor himself, the Field case must be deemed decisive of the questions here involved, unless it can be said that the evidence required a finding in favor of defendant's claim as to fraud or negligence. Considering the transactions between the two companies from a business standpoint, the inference may fairly be drawn that the Winslow Co.'s purpose was to obtain additional capital, or its equivalent, and that the Salisbury Co. desired patronage from it, but did not wish to be known as a stockholder because other customers might object; wherefore defendant was induced by the latter to act as a "dummy", and to take the stock in his name in order to conceal the real transaction. Furthermore, there is no suggestion of thought, at that time, of liability or of the desirability of any record entry other than made; all evidently believing the branch establishment would succeed, for, otherwise, neither the Salisbury Co. nor defendant would have entered into the venture. While defendant disclaimed knowledge of the agreement between the two companies, the court was not required to accept this as conclusive. It would have been an unusual transaction for defendant to have accepted shares and a directorship in a corporation in which he had no real interest, without even knowing how many shares had been agreed upon or what he was to do to carry out the purpose of the corporation requesting him to act. Moreover, it is clear from his own statement that he understood the stock belonged to the Salisbury Co., to which he was to deliver it on demand; and, in any event, his lack of knowledge was attributable to his failure to seek it. An entry of the transaction on the books

of the Winslow Co., or a statement that the stock was issued as collateral, would have either fully or partially disclosed what was purposed to conceal.

We sustain the findings and hold the court justified in refusing to find either negligence or fraud on the part of the Winslow Co., and that defendant's negligence justified the conclusion of estoppel.

Order affirmed.

On December 11, 1914, the following opinion was filed:

PER CURIAM:

Attention has been called to an omission to make a specific ruling in the opinion on defendant's contention that plaintiff really represents simple creditors with the same standing only as such creditors have under the National Bankruptcy Act (Act July 1, 1898, c. 541, 30 St. 544), and, under the agreement found by the trial court, could not claim the benefit of the estoppel herein declared, except in some such capacity as that of *bona fide* purchasers or lien or judgment creditors; that under that act the creditors here cannot avail themselves of an estoppel which the corporation could not claim. Wherefore, it was urged, plaintiff was precluded from the benefit of an estoppel.

The point has been considered, and is overruled.