CLYDE C. GRUETZMACHER, Receiver, Appellant, v. ANNA M. QUEVLI, Appellee.

No. 39390.

538

JUNE 24, 1929.

*Blythe, Markley & Rule, R. F. Clough, Kingman, Cross, Morley & Cant,* and *Edwin D. Ford, Jr.,* for appellant.

*Frank W. Chambers,* for appellee.

KINDIG, J.—The theory of the proceedings brought by the plaintiff-appellant against the defendant-appellee is that, under the laws of Minnesota, a court of that state, having jurisdiction, adjudged an assessment of 50 per cent as part of a double liability against the stockholders of the Farmers' Grain & Supply Company, a Minnesota corporation. Appellant is the receiver of that corporation, who was appointed in May, 1927, to succeed Frank L. Costin, previously acting as such trust officer. Appellee resides at Mason City, Iowa. She is the second wife of Nels Quevli. Anthony S. Quevli is the son of Nels Quevli by a former marriage. This father and son apparently were the owners and operators of said corporation, which did business at Lakefield, Minnesota, until its insolvency.

Thereafter, under the receivership proceedings, an order for

the 50 per cent assessment by authority of the Minnesota laws was made, as aforesaid, October 29, 1926. Such judgment of the Minnesota court, together with the laws of that state, is the basis for the present suit. It is contended by appellant that the appellee is the owner of 400 shares of that stock, either absolutely or for the purpose of collateral security. Therefore it is argued that she is liable for the assessment. That ownership, both absolute and conditional, is denied by appellee. So she maintains that under no circumstances is she bound to pay any assessment on stock in the aforesaid corporation.

Consideration will now be given to the various assignments of error.

I. Indefiniteness appears in appellant's pleading at places concerning the laws of Minnesota giving rise to the stockholders' liability. Yet such averments were not attacked by appellee through a motion for more specific statement, or otherwise, and such uncertainty and omissions as may appear are supplemented by an adjudication in the case of *McCabe Bros. Co. v. Farmers Grain & Supply Co.*, 172 Minn. 33 (214 N. W. 764) (pleaded and proven here), wherein appellee became a party in response to statutory notice, and took an appeal from the judgment there rendered against her to the Supreme Court of that state. Without that appearance and decision, it may be that appellant could not recover in the case at bar without more definite and extensive pleading and proof relating to the basic laws of that state giving rise to such stockholders' responsibility. However, the appellee, as before stated, appeared in the *McCabe* case, where it was determined that a legal burden existed which the stockholders of the Farmers' Grain & Supply Company must bear.

Under the laws of Minnesota (as pleaded and proven), it is the duty of said receiver to enforce the added statutory liability against stockholders. Moreover, the order of court above described, based upon an enabling statute, directed and empowered the appellant to so collect the assessment therefor, either within or without the state of Minnesota. Hence, as a matter of comity, the cause of action being contractual, the appellant will be permitted to sue the appellee in this state if, in fact, she was a stockholder of the Farmers' Grain & Supply Company, supra. *Baird v. Cole*, 207 Iowa 664.

II. In the proceeding had before the Minnesota district court, as above stated, appellee was a party. Important conclusions reached by the Minnesota court in *McCabe Bros. Co. v. Farmers Grain & Supply Co.* are essential here. First, in that opinion, announcing the conclusion of the court, it is said:

"Upon the hearing in such proceeding, the [Minnesota trial] court is required to receive and consider such evidence, by affidavit or otherwise, as may be presented upon the following points: * * *

'1. The nature and probable extent of the indebtedness of the corporation;

'2. The probable expense of the receivership;

'3. The probable amount of available assets;

'4. The parties liable as stockholders, the nature and extent of the liability of each, and their probable solvency or responsibility.' * * * 'Such order shall be conclusive as to all matters relating to the amount, propriety, and necessity of the assessment * * *.' "

Those matters thus declared are statutory in Minnesota. Further, the Minnesota court, in the *McCabe Bros. Co.* case, made the following reservation:

"As to these matters [those contained in the above designated Minnesota statutes] only, the order is conclusive. * * * A finding as to who the stockholders actually are is beyond the scope of the proceedings [to fix the amount of the assessment]. That question is to be determined in the action brought against the individual to collect the assessment, and not in the summary and informal proceedings which may rest upon affidavits wherein the court deals with probabilities. In such action to recover the assessment, the alleged shareholder may show that he is not a shareholder, or owns less shares than is claimed, or has discharged his liability, or has an offset, or any other defense which is personal to himself."

Manifestly, the appellee is free, under the Minnesota decision, to insist in the present Iowa suit that she is not a stockholder at all. Taking advantage of that permission thus expressed in the *McCabe Bros. Co.* case, the appellee places her en-

tire defense upon the allegation in her answer that she is not now, and never has been, a stockholder in said institution.

III.  During the trial, appellant tacitly, if not actually, admitted that appellee was not an absolute owner of this stock, but rather, the holder thereof for the purpose of securing a $3,400 loan.  Nevertheless appellant contends that the stock records and books of the aforesaid corporation listed and carried appellee as a stockholder.

For this reason, appellant asserts, the appellee is liable to creditors of the insolvent corporation under the Minnesota laws, not because she was in fact a stockholder, but because she permitted the books and records of the corporation to designate her as such.

By way of answer to that claim, appellee insists that she at no time knew anything about the corporation, had no transactions with it, never held the stock as collateral security or otherwise, did not know that the corporate books indicated differently, and when the certificate was finally presented to her, she refused the same, and indorsed her name upon it only for the purpose of rejecting the offered security.  Corroboration was furnished appellee on this proposition by her stepson.

To prove appellee was a stockholder of the Farmers' Grain & Supply Company, appellant offered in evidence the stock book and a stub thereof.  The stub in words and figures is to this effect:

"Certificate No. 6.
For 400 shares, Issued to Anna M. Quevli [appellee],
Mason City, Iowa.  Dated December 22nd, 1921."

Number 6 on the stub corresponds with the certificate evidencing the 400 shares of this stock which, as argued by appellant, were issued to appellee December 22, 1921.  A threefold objection to admitting the two exhibits in the evidence was made by appellee, upon the theory that it was not shown:  (a) That she was a stockholder; (b) that she had any knowledge concerning the records; or (c) that she ever in fact received the stock certificate.  Accordingly, the objection was sustained.  Wherefore, appellant excepts.

Justification for this action of the trial court is attempted by appellee in her argument on the basis that the records were

not properly identified as the authentic books of the corporation. Obviously that was not the idea contained in the objection upon which the district court ruled. Rather, the appellee is now amending her hold, and asserting something not urged when the exhibits were offered. Consequently, the ruling was wrong, and the stock book and stub should have been admitted into the record, to be considered with the other facts and circumstances relating to whether appellee was in fact a stockholder, conditional or unconditional. (As to whether the exhibits, in and of themselves, are evidence that the appellee was a stockholder, we do not now decide.) Other evidence associated and connected those exhibits with appellee, and tended to identify her as one who had accepted the stock for the purpose of collateral security.

Nels Quevli, as before related, was appellee's husband. She loaned him, or his business, $3,400, and desired security. Her version is that she wanted real estate therefor. However that may be, while her husband and his son were operating this corporate concern, the 400 shares of stock were purported to have been issued to appellee, and so appeared upon the stock records. Without change, the books thus stood from the 22d day of December, 1921, until July 1, 1922, when she indorsed the certificate, for the sole purpose, it is claimed, of transferring the same to her husband. Statements were made by appellee that she knew nothing about the Farmers' Grain & Supply Company, but thought her husband operated the Quevli Grain Company. But, on cross-examination, the appellee admitted that, in December, 1921, she took title to the elevator property, and then deeded the same to the corporation, knowing at the time that it was Farmers' Grain & Supply Company.

Again, appellee gave her deposition in the case of McCabe Brothers Company, a corporation, against the Farmers' Grain & Supply Company, herself, and others, on the 21st day of August, 1925. There she stated that the Farmers' Grain & Supply Company, or her husband, turned over to her some stock, as collateral for money loaned. At the bottom of each page constituting the record of that deposition, appellee's name is signed. On another occasion, while that deposition was being taken, appellee was asked the following question: "Q. You were a stockholder then?" And she answered: "In a way, as collateral for a loan of $3,400." Admission was made by appellee during her cross-

examination in the present hearing that such former interrogatory was propounded and response given on the previous occasion. Similar additional answers were made by appellee for the purposes of that deposition. Furthermore, it appears that appellee had, on various occasions, different business transactions with her husband and his company.

Resultantly, the stock records refused admittance, under the facts and circumstances, should have been received in evidence. These stock records are not conclusive or unrebuttable, but may be explained, denied, or refuted. Here we have under consideration appellant's right to have the jury determine the facts relating to appellee's testimony, on the one hand, and that of appellant on the other. Therefore, when those stock books are thus in the record, and weighed with appellee's sworn statements in the deposition aforesaid, and the other corporate transactions, the court cannot say, as a matter of law, that appellee was not a stockholder, at least to a limited degree.

IV. Of course, if appellee is an absolute stock owner, she was liable for the assessment; and, in fact, she does not deny this. Assuming, on the other hand, but not deciding, that appellee is not an absolute owner of this stock, but held it for the purposes of collateral security, then, under the Minnesota law (pleaded and proven), she might still be accountable for the double assessment. *State v. Bank of New England*, 70 Minn. 398 (73 N. W. 153; *Marshall Field & Co. v. Evans, Johnson, Sloane & Co.*, 106 Minn. 85 (118 N. W. 55) ; *Way v. Barney*, 127 Minn. 346 (149 N. W. 462) ; *Bartlett v. Stephens*, 137 Minn. 213 (163 N. W. 288) ; *Levison v. Hamilton*, 204 Fed. 72. See, also, *Lebens v. Nelson*, 148 Minn. 240 (181 N. W. 350). Explanation of this doctrine was given in *Marshall Field & Co. v. Evans, Johnson, Sloane & Co.*, supra, to this effect:

''If the stock was issued to the respondent by the defendant simply as collateral security for the payment of its promissory note to the respondent, and such fact appeared upon the face of the stock record of the defendant, it is immaterial in this case what the terms of the certificate were. * * * It is well settled [however] that one to whom corporate stock has been transferred in pledge or in trust, or as collateral security for money loaned, but who appears on the books of the corporation as the general

owner thereof, is liable as a stockholder for the debts of the corporation. * * * One reason for this rule, perhaps the best one, is that a party so holding himself out to the public as the general owner of the stock is estopped from denying his liability to creditors who have not been advised to the contrary by the stock record of the corporation."

Foundation for the present action is laid, under the pleadings, upon the statutory and common laws of Minnesota. Those laws, therefore, must determine appellee's liability if the stock records show that she is an unqualified stockholder, although, as a matter of fact, she held the stock only for the purposes of collateral security. If, on the other hand, she is not a stockholder, and did not receive the stock for the purposes of collateral security or otherwise, then there can be no responsibility, under the laws of that state. Appellee owned stock only until July 1, 1922, and hence the burden thus to be borne by her, if at all, must be limited to that date. See *McCabe Bros. Co. v. Farmers Grain & Supply Co.*, supra.

V. Complaint is further made by appellant because the district court excluded certain evidence relating to what appellee's husband said, to the effect that she was a stockholder.  Prejudice, the appellant insists, arose therefrom, because certain creditors extended the corporation credit on the theory that appellee was a stockholder. Proof of appellee's relationship with the corporation cannot, of course, be made by hearsay evidence. The statements concerned were not purported to have been made in her presence or within her hearing, nor is it shown that Mr. Quevli had any authority to speak for his wife in the premises. No error, therefore, appears because of the court's ruling on this subject.

Wherefore, the judgment of the district court is reversed, and the appellant given a new trial.—*Reversed.*

ALBERT, C. J., and EVANS, WAGNER, and GRIMM, JJ., concur.