### † Quimby *versus* Dill & als.

A lease to one during his life, with the privilege of furnishing his daughters a home so long as they remain unmarried, gives to them no rights as tenants of the freehold.

A creditor who blends together his claims accruing *before* and *after* a voluntary conveyance of his debtor, and levies on the estate conveyed, has only the rights of a *subsequent* creditor.

In a writ of entry, the question whether a life estate in the premises has been forfeited on account of *waste*, cannot be considered.

A levy of land on a judgment obtained *collusively* by the tenant of a life estate therein, does not work a forfeiture of such particular estate.

On Report from *Nisi Prius*, Rice, J., presiding.
. Writ of Entry.

The defendants pleaded the general issue, and Enoch Dill and his wife, two of them, by their brief statement, claimed a life·estate in the demanded premises; Mercy Dill, the other defendant, claimed title to a portion by force of a levy, and to the residue as tenant under the other defendants, and if the levy failed, a tenancy in the whole under Enoch and his wife.

On July 3, 1843, Enoch Dill conveyed the premises to Eben. M. Dill, and the latter executed a lease of the same under his hand and seal to Enoch Dill and his wife Doraxa, during their lives, which was recorded in April, 1849. The lease contained the following stipulations: — "And the said Eben. M. Dill is not to make waste or strip the farm, or any part thereof, by virtue of the deed which I have this day given him, and the said Enoch Dill has the privilege of furnishing a home for his daughters at his house so long as they shall remain unmarried, the said Eben. M. to have the privilege of carrying on the farm with me, as long as we shall agree to carry it on together, and at no time shall the said Eben. M. be debarred from entering on said farm for the purpose of viewing it or making repairs, the said Eben. M. to pay all the taxes assessed on said farm."

On March 22, 1853, Eben. M. Dill conveyed the premises to demandant, by a deed of quitclaim.

Mercy Dill, the daughter of Enoch, and who remained unmarried, introduced a judgment in her favor against Enoch Dill, and a levy upon that part of the premises described in her brief statement. This judgment was upon account annexed to the writ, which was sued on Nov. 9, 1850, for her personal services, for the years from 1827 to 1840, inclusive, and 26 weeks of the year 1842, together with one item of $10, in 1837, for cash lent.

The services were charged at $52, per year, and the interest for each yearly services. The judgment was for the sum of $1065,46.

Upon the account annexed to the writ was the following admission signed by Enoch Dill: —

"Nov. 8, 1850, I hereby acknowledge, that the within account is correct and justly due Mercy Dill, and that I will pay the same."

The demandant introduced evidence tending to show, that Mercy, during the time charged, worked at various places, and that during the time, it was not expected that she should have any wages; and that the consideration of the

deed to Eben. M. Dill, was for his personal services; also, that much of the wood on the premises had been sold off by Enoch Dill.

There was also opposing testimony.

It was agreed, that upon the legal evidence the Court might draw inferences as a jury might, and render the proper judgment.

*May*, for tenants.

Under the papers in the case, Enoch Dill and wife are entitled to the possession of these premises during their lives, unless they have done something to forfeit it, and if they have not forfeited their estate, the plaintiff cannot oust them by a writ of entry.

In this action, the question of forfeiture cannot be tried for, or by reason of waste. The only mode of trying that question is an action of waste by the one who has the next immediate estate of inheritance. R. S., c. 129, § § 1, 4.

The only remedy for waste is by force of our statutes, and the statute remedy only can be pursued. *Smith* v. *Follansbee*, 13 Maine, 273.

But if, in this form of action, a forfeiture may be established on the ground of waste by the tenant, still the plaintiff could only recover for waste after his ownership of the premises. In this case none is proved after the plaintiff obtained his deed.

If it be possible for plaintiff to recover the place wasted, to use the language of the statute, what is to be included in such recovery? Is it the whole estate? If the waste consists in cutting wood, is the dwellinghouse, barn, tillage, land, &c., forfeited? Such is not the construction in New York. *Jackson* v. *Tibbetts*, 3 Wend. 341. Enoch Dill and his wife would seem to be entitled to hold possession of the premises.

As to the other defendant, the outstanding title in the freehold in Dill and wife, is a good defence for her. The plaintiff has no right to possession.

But she has also a defence as to a portion of the premises

as the owner in *fee simple.* The levy shows her rights. It was for a debt due. True it was outlawed, but the statute does not pay a debt, though it may prevent its recovery. But the right to set up the statute, is in the debtor alone. On the evidence, here was a *bona fide* debt. But whatever may be thought of the levy, she is still protected by the life estate of Enoch Dill and his wife, whose faithful servant and daughter she is.

*L. M. Morrill,* for demandant.

The positions of Mercy Dill are not tenable or allowable as legal propositions. The rules and principles of pleading will not permit her to maintain this *hypothetical* defence; " if she is not seized of a part by her levy, then she is tenant as to the whole."

She must, at her peril, stand upon the averment that she is seized of a part in fee, or that she claims the whole, as tenant. No alternative statement is admissible.

Her plea must be regarded as bad, and her defence under it rejected, so far as she claims as tenant.

1. It is bad for duplicity.

2. It is repugnant. She claims that she is seized in her own right, and at the same time, as tenant. These statements are both affirmative statements, or, to be allowable at all, must be regarded so, and as such, it is obvious they cannot both be true.

3. It is a *felo de se,* as, by her plea, she both affirms and denies demandant's title. By setting up her levy, she denies and repudiates his title, while, by her plea of tenancy, under the lease of Enoch Dill from Eben. M. Dill, she affirms it and claims under it.

As to the title of Enoch Dill and wife, their estate under the lease, has been forfeited.

They have undertaken, by conniving at the suit of Mercy Dill and her levy upon the premises, to destroy the title of their landlord, and to affirm the same in Mercy, and thus effectually to alienate the estate in fee, and put a stranger in possession of it and embarrass it. 4 Kent's Com. 105.

Any act of desertion or which is inconsistent with the tenant's estate, will determine it. *Campbell* v. *Proctor*, 6 Maine, 12; 11 Mass. 222.

They consented to, and aided in the perpetration of a fraud on the estate and title of the lessor, and thus usurping his estate and title they lose their own.

As to the defence of Mercy Dill, she cannot be permitted to interpose a tenancy, which her suit and levy show she did not claim, and the institution of which suit, if she had such tenancy, would have destroyed it.

The position of reliance upon her levy for part must fail, if not upon the legal grounds above indicated, upon the ground of fraud.

Her suit and levy, and all the proceedings connected with it, are fraudulent. A bare statement of the facts shows it.

The account, upon its face, shows it to have been trumped up. If she ever had any such account, it was barred by the statute of limitations, and it is obvious she obtained an acknowledgment of indebtedness from her father for the purpose of these proceedings.

To be satisfied of this, it is only necessary to consider, that she knew of the conveyance of her father to her brother when made, was assenting to it for more than ten years; accepted and enjoyed the privileges of home under and provided for in the lease; all showing that she had no right or cause to complain, either as regarded the character of the transaction between father and brother, or on account of any claim she had as a creditor to her father.

Again, her debt, under the circumstances, must be regarded as subsequent to the conveyance, dating from the written acknowledgment of the father, which is subsequent to the conveyance from Enoch Dill to E. M. Dill.

Again, her levy should have been upon the life estate of Enoch Dill; it is upon the estate of Eben. M. Dill, whose title is not impeached, and of which she has no right to complain, and is invalid.

GOODENOW, J. — This is a writ of entry. Enoch Dill and Doraxa, his wife, two of the respondents, plead the general issue, and filed a brief statement, claiming that they are seized of a life estate in the demanded premises, by virtue of a lease from Eben. M. Dill to them. The respondent, Mercy Dill, pleads the general issue, and also files a brief statement, claiming that she is seized of a portion of the demanded premises, by virtue of a levy of an execution in her favor, against said Enoch Dill; and that, as to the residue of said premises, she claims to hold the same, as tenant of the said Enoch and Doraxa, under their lease; and that if she is not seized by virtue of said levy, of any part of said premises, then she claims possession of the whole, as tenant of said Enoch and Doraxa Dill.

The demandant puts into the case a deed from Enoch Dill to Eben. M. Dill, embracing the demanded premises, dated July 3, 1843, acknowledged the same day, and recorded Oct. 19, 1847. Also a deed of quitclaim of the same premises to himself, from Eben. M. Dill, dated March 22, 1853, acknowledged the same day, and recorded May 17, 1853.

The respondents put into the case a lease of said premises, from said Eben. M. Dill, to said Enoch Dill and Doraxa Dill, his wife, acknowledged July 3, 1843, and recorded April 9, 1849, to hold the same, "during their natural lives, or the life of the survivor." "And the said Enoch Dill has the privilege of furnishing a home for his daughters at his house, so long as they shall remain unmarried." Mercy Dill is a daughter of Enoch, and remains unmarried.

The facts relied upon by Mercy Dill, independent of her levy, are insufficient to entitle her to hold the demanded premises against the demandant. The lease of Eben. M. Dill to Enoch Dill allowed him the privilege of furnishing a home for her on the premises while she remained unmarried. It did not make her tenant of the freehold, as she claims to be by her pleading. 2 Greenl. on Ev. § 556.

Is she tenant in fee of that part of the premises covered by her levy?

It is not contended that the deed from Enoch Dill to Eben. M. Dill, was fraudulent or void as to *subsequent* creditors. It was prior to her attachment, which was on the 9th of Nov., 1850. The account annexed to her writ, is for her "services doing house-work from June, 1827, to June, 1828; 52 weeks, at $1 per week, — $52,00." "Interest on the same sum, 14 years, up to year 1843, $43,68." And for each year the same sum, with the interest on the same, to 1843, including $10 for money lent, and interest on the same; and the whole amounting to $1055,28. There was no evidence in the case to prove an express promise, on the part of her father, to pay her for her services. The probability is, that they were rendered without any expectation of any pecuniary reward. There is no evidence that she ever demanded or claimed payment of her father until the 8th of Nov., 1850, the day before the action was commenced against him. It appears that he *then* indorsed the following admission and promise on her account, which was subsequently annexed to her writ, to wit: — "I hereby acknowledge that the within account is correct and justly due Mercy Dill, and that I will pay the same.      Enoch Dill."

"Nov. 8, 1850."

Whatever may have been the merits of her claim for the principal debt, the case does not show any facts by which it can be *implied* that her father was bound to pay the interest charged in her account. He, perhaps, obliged himself to do so by his express promise on the 8th of Nov. 1850.

If a creditor, having demands accruing partly before, and partly after a conveyance by his debtor, which he would impeach, on the ground of fraud, blends them in one suit, and, having recovered judgment, extends his execution on the land; he can come in only in the character of a *subsequent* creditor. *Reed* v. *Woodman*, 4 Maine, 400.

We are of opinion that Mercy Dill is not entitled to hold

that part of the demanded premises covered by her levy. And that as to the residue, she has no title under the lease.

By the R. S., c. 129, § 1, if any tenant in dower, or by the curtesy, or tenant for life or years, shall commit or suffer any waste on the premises, the person having the next immediate estate of inheritance therein, may have *an action of waste* against such tenant, wherein he shall recover the place wasted, and the amount of damages done to the premises. And the fifth section gives the same right of action to one who has the remainder or reversion.

But this is not an action of waste, and it therefore becomes unnecessary to determine whether such an action could or could not be maintained, upon the evidence submitted to us in this case.

But it is contended, as to the title of Enoch Dill and wife, that their estate under the lease has been *forfeited.* That they have undertaken, by conniving at the suit of Mercy Dill and her levy upon the premises, to destroy the title of their landlord, and to affirm that the title to the same is in said Mercy, and thus effectually to alienate the estate in fee and to put a stranger in possession of it and to embarrass it.

And so far as the facts are concerned in this allegation it appears to be well founded. The whole of this extraordinary account of Mercy Dill was admitted by her father to be justly due to her the day before her suit was commenced; and it also appears by the officer's return, that he chose one of the appraisers, when the levy was made.

But is the proposition equally well founded in law? It is true, Mr. DANE says, while examining the English cases upon this subject, c. 136, a. 3, § 5, "It is a general principle, that if a particular tenant alien a greater estate than by law he is entitled to do, and thereby divests the remainder or reversion, he forfeits his estate to him, whose right is attacked thereby." And the reasons given are, 1. Because such alienation amounts to a renunciation of the *feudal* connexion and dependence. 2. It tends, in its nature, to divest the remainder or reversion expectant. 3. The

particular tenant, by granting a larger estate than his own, has, by his own act, put an end to his original interest, and on such determination, the next taker is entitled to enter regularly, as into his remainder or reversion."

It is also true, that with all his researches, he was unable to cite one American case in which a forfeiture of the estate has been adjudged or decreed for this cause.

Chancellor KENT says, "Estates for life were, by the common law, liable to forfeiture, not only for waste, but for alienation in fee." "And that in New York and Pennsylvania, this feudal notion of forfeiture is expressly renounced and the doctrine placed upon just and reasonable grounds. Any conveyance by a tenant for life, or years, of a greater estate than he possessed, or could lawfully convey, passes only the title and estate which the tenant could lawfully grant. It is, therefore, an innocent conveyance, whatever the form of the conveyance may be, and produces no forfeiture of the particular estate. It does not, like a feoffment with livery at common law, *ransack the whole estate*, and extinguish every right and power connected with it." 4 Kent, 83. By the R. S., c. 91, § 9, we have a provision similar to that referred to above.

Upon this branch of the case, we are of opinion that the defence is made out, and that, as the demandant has no right of possession till after the termination of the life estate, there must be         *Judgment for the defendant.*

*Tenney* and *Rice, J. J.,* concurred in the result.

*Appleton, J.,* concurred.