## JOHN H. LEBENS, AS RECEIVER OF THE LE SUEUR COUNTY CO-OPERATIVE COMPANY v. HENRY NELSON AND OTHERS.[1]

February 11, 1921.

No. 22,114.

**Evidence — stock books admissible to prove ownership of stock.**

1. The records of a private corporation are competent evidence of the

[1]Reported in 181 N. W. 350.

ownership of corporate stock where an alleged stockholder denies such ownership.

### Copy of names on original subscription of stock admissible.

2. A list of stockholders, prepared under the direction of the officers of a corporation by copying the names appearing on the original subscriptions for stock, is admissible in evidence to show that the persons whose names are entered on the list were stockholders.

### Evidence conclusive.

3. The evidence was of such a nature as to show conclusively that the defendants were stockholders of the corporation of which plaintiff was the receiver.

### Corporation indivisible.

4. A corporation cannot divide itself into several parts so that each segment shall constitute a separate entity in dealing with the public.

### Stockholders liable for debts of corporation.

5. The individual liability of stockholders for the debts of the corporation continues after a surrender of the stock in exchange for money or property of the corporation. Corporate capital may not be withdrawn or distributed among stockholders without provision being first made for the full payment of corporate debts.

### Rights of creditor not affected by surrender of stock.

6. A creditor whose claim is founded on a running account, part of it arising before and part after the stock was surrendered, has all the rights of an existing creditor, even though the entire account has been reduced to judgment.

Twelve actions in the district court for Scott county to enforce the liability of as many stockholders in an insolvent corporation. The actions were tried together before Tifft, J., who made findings and ordered judgment in favor of defendants. From orders denying his motion for new trials, plaintiff appealed. Reversed.

*James E. Trask,* for appellant.

*George F. Sullivan,* for respondent.

Lees, C.

Separate actions were brought by the receiver of the Le Sueur County Co-Operative Company, a Minnesota corporation, to enforce the individual liability of 12 stockholders for the debts of the corporation.

148 M.—16.

The actions followed the assessment of the stockholders, reviewed here in Finch, Van Slyck & McConville v. Vanasek, 132 Minn. 9, 155 N. W. 754, and were tried together. There were findings in defendants' favor and plaintiff has appealed from an order denying a new trial of each action.

The complaint, among other things, alleged that, prior to the time when the claims of existing creditors arose, each defendant subscribed for and became the owner and holder of one share of stock and has been a stockholder ever since. The answers denied that defendants had ever subscribed for or owned any stock in the corporation, and then alleged in substance that five stores had been conducted under the supervision of the corporation; that each store constituted a distinct unit or department of the business of the corporation; that only the members of each unit were individually liable for its debts; that one of the stores was located at Elko, Minnesota; that, if defendant ever became a stockholder in the corporation, it was prior to September 1, 1908, and as a member of the Elko unit; that on the date mentioned the Elko store was discontinued and the goods in it removed to other stores; that the stockholders who were then members of that unit surrendered their stock to the corporation and retired as stockholders, and their stock was canceled in accordance with the by-laws. The court found that the allegation in the complaint to which we have referred was not true, and that the allegations of the answers above set out were true, and concluded that defendants were not liable. The decision can only be sustained on the hypothesis that it conclusively appeared that defendants never were stockholders, or that they were stockholders, but had surrendered their stock before the present corporate indebtedness arose.

1. The corporation failed in 1909 and its books and papers were turned over to a representative of its creditors. The books were not produced at the trial. The record evidence introduced was fragmentary and somewhat unsatisfactory. An officer of the corporation testified that a stock register had been kept, containing the names of the stockholders, and that there was a stock certificate book with the stubs of the certificates in it, but neither book was produced. The manager of the corporation had made an alphabetical list of the names of all the stockholders, dividing them into five groups. One group was composed of

the members of the Elko unit. The names listed were copied from stock subscription papers, which, with one exception, had been lost. The officers of the corporation had directed the manager to prepare the list. It had been kept at the office of the corporation and was produced at the trial and received in evidence. It contained the names of the defendants in the Elko group. Officers of the corporation were elected in March, 1909. The names of nine of the defendants appeared on the election ballot which was received in evidence. They had been nominated to represent the Elko store in one capacity or another. Only one of the defendants testified and he admitted that he had been one of the Elko stockholders.

Defendants contend that the records of a private corporation are not receivable in evidence to establish the fact of ownership of stock as against one denying his connection with the corporation. In support of this proposition, they cite 2 Thompson, Corporations (2d ed.) § 1857; Harrison v. Remington Paper Co. 140 Fed. 385, 72 C. C. A. 405, 3 L.R.A.(N.S.) 954, 5 Ann. Cas. 314; Hinsdale Sav. Bank v. New Hampshire Banking Co. 59 Kan. 716, 54 Pac. 1051, 68 Am. St. 391. Whatever the rule may be in other jurisdictions, we think that the statutes of this state and the decisions of this court make the records of a corporation competent evidence as against an alleged stockholder who denies his ownership of corporate stock. The statute requires accurate and complete records to be kept of all stock subscribed, transferred, canceled or retired; directs that the corporate books shall be so kept as to show intelligently the original stockholders, their respective interests, the amount paid in on their shares, and all transfers thereof; provides that any officer, agent or employee, who knowingly and wilfully makes a false statement, report or entry in or upon any of the corporate books or papers, shall be guilty of a felony, and makes a stock certificate prima facie evidence of ownership by the person to whom it is issued. Sections 6183, 6177, 6203 and 6194, G. S. 1913.

In Holland v. Duluth I. M. & Dev. Co. 65 Minn. 324, 68 N. W. 50, 60 Am. St. 480, the rule was adopted that, where the name of an individual appears on the stock book as a stockholder, the prima facie presumption is that he is the owner of the stock. The court said that, though the book in which the name of the alleged stockholder appears is not the

stock book required by the statute, it is enough if it is the stock book of the corporation, and that the rule adopted does not require that the entries must be found in a book kept in any particular manner, or that the book contains the entries prescribed by statute. See also Randall Printing Co. v. Sanitas M. W. Co. 120 Minn. 268, 139 N. W. 606, 43 L.R.A. (N.S.) 706.

In Lindeke v. Scott County Co-op. Co. 126 Minn. 464, 148 N. W. 459, the original stock subscription lists were lost. The secretary of the corporation had copied them in a book under the heading "Stockholders' Register." It was held that the book was properly received in evidence to show who were the stockholders. A record similarly prepared was held to be competent evidence for the same purpose in Congdon v. Winsor, 17 R. I. 236, 21 Atl. 540. Although there is some diversity of opinion, the decided weight of authority is in harmony with the rule stated in Holland v. Duluth I. M. & Dev. Co. supra. See Turnbull v. Payson, 95 U. S. 418, 24 L. ed. 437; Semple v. Glenn, 91 Ala. 245, 6 South. 46, 24 Am. St. 894; Zang v. Wyant, 25 Colo. 551, 56 Pac. 565, 71 Am. St. 145; Glenn v. Orr, 96 N. Car. 413, 2 S. E. 538; South Branch Ry. Co. v. Long's Admr. 43 W. Va. 131, 27 S. E. 297. The rule is founded on considerations of convenience and on the further ground that corporations are creatures of the state, subject to public control and supervision, and are required by law to keep true records. It is presumed that their officers have obeyed the law and kept the records correctly, though, of course, the presumption may be rebutted by any competent evidence. We conclude that the list prepared by the manager was prima facie evidence of the ownership of stock by the persons whose names appear thereon.

It was not the only evidence on that subject. When the corporation was organized several stock subscription lists were circulated. Apparently all the lists were in the same form and there was one for each locality where stores were established. One of them, the Lonsdale list, has been preserved and was introduced in evidence. It begins as follows:

"I hereby subscribe for one share of One Hundred Dollars ($100.00) of the capital stock of the Le Sueur Co-operative Company and agree to pay a membership fee of Five Dollars ($5.00). On demand I agree to settle for same in cash or by note."

The articles provide that the capital stock shall be divided into shares of $100, and that no person shall receive a dividend on more than one share of stock, with certain exceptions not applicable here. The evidence was of such a nature as to show conclusively that defendants were stockholders, each owning one share of stock. It follows that the decision cannot be sustained on the theory that defendants never were stockholders.

2. Were they liable for the general indebtedness of the corporation, and, if so, would the cancelation of their stock absolve them from such liability? We think it needs no argument to demonstrate that a corporation cannot divide itself into several parts so that each segment will constitute a separate entity when dealing with the public. Possibly such an arrangement would be permissible where only the rights of consenting stockholders were involved. That, however, is not this case. Here are creditors seeking to charge individual stockholders with the responsibility for the debts of the corporation which the law imposes upon all stockholders in a corporation. In the absence of clear proof that these creditors have waived their statutory rights or are estopped from asserting them, they may undoubtedly compel defendants to respond to the extent of their individual liability for the corporate indebtedness.

We think it is equally clear that, as to existing creditors, such liability continues, notwithstanding the fact that the corporation has discontinued one of the branches of its business and has permitted the stockholders connected therewith to surrender their stock in consideration of money or property received from the corporation. To the extent that money, goods or stockholders' notes were exchanged for the stock, the capital of the corporation was depleted. The capital was its own property, but it could not be withdrawn or distributed among stockholders without provision being first made for the full payment of corporate debts. First Nat. Bank v. Gustin M. C. M. Co. 42 Minn. 327, 44 N. W. 198, 6 L.R.A. 676, 18 Am. St. 510; Minnesota T. M. Co. v. Langdon, 44 Minn. 37, 46 N. W. 310; Hospes v. N. W. M. & C. Co. 48 Minn. 174, 50 N. W. 1117, 15 L.R.A. 470, 31 Am. St. 637; Preiss v. Zins, 122 Minn. 441, 142 N. W. 822; Mackall v. Pocock, 136 Minn. 8, 161 N. W. 228, L.R.A. 1917C, 390.

In Farnsworth v. Robbins, 36 Minn. 369, 31 N. W. 349, the by-laws

provided for the surrender of stock to and its purchase by the corporation. A stockholder, who had purchased his stock for $3,500, delivered his certificates to an officer of the corporation and received in exchange $1,500 and his unpaid note for $2,000. The corporation was then in debt but solvent. Subsequently it became insolvent and a receiver was appointed who sued the stockholders, asking judgment for $3,500. A portion of the indebtedness had arisen before the stock was retired. It was held that the stockholder's liability was not extinguished and a recovery was allowed. The reasons for so holding are stated in Chrisman-Sawyer Banking Co. v. Independence Wool Mfg. Co. 168 Mo. 634, 68 S. W. 1026. If stockholders were allowed to sell their stock to the corporation and escape liability by so doing, the door for frauds on creditors would be thrown wide open and the consequences would not only be disastrous to creditors, but would be fatal to the corporations themselves, inasmuch as no one would deal with them under such conditions. The decisions are uniformly to the same effect and are collected in 14 A. C. J. p. 280, and in 2 Fletcher, Cyc. Corp. § 639.

Some cases go so far as to hold that subsequent, as well as existing, creditors may hold a stockholder who has thus surrendered his stock. Whether we should follow them need not be considered, for it clearly appears that there were existing creditors when the defendants surrendered their stock. Nine claims were allowed by the court, amounting to more than $3,000. The entire amount of two of these claims represented debts contracted prior to March 8, 1909. The other seven were founded on running accounts for goods sold. The first item of each account represented a sale made prior to that date; the other items were later. The evidence is persuasive that the stock was not turned in or canceled until after that date. The exact time was not fixed, but it was not long after. This court has held that an indebtedness of a customer to a dealer upon a running account furnishes but one entire cause of action. Memmer v. Carey, 30 Minn. 458, 15 N. W. 877.

If a creditor's claim is founded on a running account, it is probably true that, strictly speaking, he is a subsequent creditor as to items charged against the debtor after he has transferred his property, although other items represent charges made prior to the date of the transfer. There are cases which hold that, if such a claim is reduced to judgment,

the plaintiff becomes a subsequent creditor for all of the debt. Baker v. Gilman & Thurston, 52 Barb. (N. Y.) 26; Quimby v. Dill, 40 Me. 528; Moritz v. Hoffman, 35 Ill. 553. As was shown in Chapman v. Hughes, 61 Miss. 339, these decisions are based on the theory that a judgment is an entirety and cannot be apportioned. If they are followed, an injustice will often be done to creditors seeking to set aside fraudulent transfers. Creditors, with claims on running accounts of the character we are now considering, will find themselves in this dilemma. To obtain judgment by suing on the account as an entirety, is to enter the category of subsequent creditors as to whom the transfer may be valid. To sue on the portion of the account which arose prior to the transfer is to forego the possibility of a recovery upon the subsequent items of the account under the doctrine of Memmer v. Carey, supra. As against a debtor who has transferred his property in fraud of creditors, a creditor should not be placed in such a dilemma by an arbitrary extension of the application of legal doctrines. In the cases at bar plaintiff stands in the same position as a creditor who seeks to impeach his debtor's voluntary transfer. Hospes v. N. W. M. & C. Co. supra.

We conclude that there must be a new trial of these cases, and the order refusing to grant it is accordingly reversed.