NEAL CROWLEY v. MARIE ANNA POTTS.[1]

April 25, 1930.

No. 27,869.

[1]Reported in 230 N. W. 645.

*William Harrison* and *Arthur Roberts,* for appellant.

*James E. Trask,* for respondent.

WILSON, C. J.

The appeal is from a judgment entered after defendant's motion for a new trial had been denied.

The action is to enforce the constitutional liability on 10,000 shares, par value of one dollar each, of the capital stock of the Merritt Development Company, a Minnesota corporation, hereinafter referred to as the corporation, issued to Charles W. Potts in May, 1916. Mr. Potts transferred 7,750 shares of this stock on the following dates to the following persons:

| | | |
|---|---|---:|
| On July 18, 1917, to C. E. Updike | | 2,000 shares |
| On November 5, 1917, to C. F. Krueger | | 1,250 shares |
| On January 30, 1918, to A. Sundberg | | 1,000 shares |
| On June 20, 1918, to W. H. Fitzer | | 500 shares |
| On June 20, 1918, to E. C. Downing | | 150 shares |
| On June 20, 1918, to L. Peterson | | 350 shares |
| On October 15, 1918, to A. Reeves | | 500 shares |
| On October 15, 1918, to E. A. Reeves | | 500 shares |
| On December 28, 1918, to J. C. Ranseen | | 1,000 shares |
| On March 1, 1919, to Webster Smith | | 250 shares |
| On March 1, 1919, to L. Peterson | | 250 shares |
| Total | | 7,750 shares |

Mr. Potts died March 22, 1927, owning 2,250 shares, and Mrs. Potts, the appellant, is now the representative of the estate. Plain-

tiff is the receiver of the said corporation, having been so appointed in the federal court in sequestration proceedings instituted on August 30, 1921, wherein a 100 per cent assessment has been made against those liable as stockholders.

This action is to recover the primary liability on the 2,250 shares, which is admitted, and the secondary liability on the 7,750 shares. By adjustments, stated in the findings, the Sundberg 1,000 shares and the Ranseen 1,000 shares are out of the case, and $187 has been paid on the Krueger 1,250 shares.

The theory is that defendant is "liable" because of an alleged existing indebtedness at the time of the transfer of said stock. This claim rests on these facts: On May 3, 1916, the Gorham-Garbett Company made a mining lease on 80 acres of land to Charles W. Potts and four other persons as lessees, for the term of 50 years. The lessees agreed to pay all taxes on the land and to pay as royalty 35 cents per ton upon all iron and manganese ore mined and removed and a minimum royalty of 35 cents per ton on from 10,000 tons to 50,000 tons annually as therein designated. The lessees were to pay such royalties at the end of each three months. They had the privilege to terminate the lease at any time by giving 60 days' notice as therein provided. It was never. terminated. On May 13, 1916, said lessees assigned said lease to the corporation, which for a consideration covenanted and agreed to assume and perform the lessees' obligations in said lease.

On August 30, 1921, when the sequestration proceedings were instituted, the corporation was indebted to the Gorham-Garbett Company for royalties then due on said lease in the sum of $8,020.83. All this accrued subsequent to the transfer of the stock by Mr. Potts.

There is another similar transaction in which Franklin W. Merritt, Frank A. Barber, A. T. McPherson and the estate of W. A. Kerr were creditors in the sum of $3,671.86. This item will be controlled by our comments relating to the claim of $8,020.83.

The controversy which relates to the time when the claims of the named creditors came into existence does not rest upon conflicting

evidence but involves the conclusions to be drawn from uncontradicted evidence.

■ The order for assessment is conclusive as to all matters relating to the amount, propriety, and necessity of the assessment. It is not binding upon the question of defendant's liability, and she is at liberty in this action to assert and litigate the claim that the facts are insufficient to constitute a cause of action against her. McCabe Bros. Co. v. Farmers G. & S. Co. 172 Minn. 33, 214 N. W. 764; Zander v. Affeldt, 173 Minn. 496, 217 N. W. 595; Kuhlman v. Granite City Inv. Corp. 174 Minn. 166, 218 N. W. 885; Selig v. Hamilton, 234 U. S. 652, 34 S. Ct. 926, 58 L. ed. 1518, Ann. Cas. 1917A, 104.

■ Appellant in this action has attempted to challenge the order of assessment because it does not show a computation demonstrating the propriety of a 100 per cent assessment upon the transferor's liability nor does it disclose the proportions involved. The rule is stated in Harper v. Carroll, 66 Minn. 487, 69 N. W. 610, 1069. She cannot have these matters determined herein. Much confusion would necessarily follow any effort on the part of any court, other than the court wherein the sequestration proceedings are pending, attempting to determine these matters. The order in that court must be final as to the amount of the assessment and the necessity therefor. A transferor of stock may be liable for but a small net amount. But the determination of that amount, liability being conceded, must rest with the court collecting and distributing the funds. It is not to be assumed that the money which appellant is required to pay will be used for unauthorized purposes. We have an abiding faith in the federal and state courts in Minnesota giving such transferor or past stockholder who is liable to an assessment because of debts in existence at the time of the transfer ample hearing so that his money will be used only in the discharge of his obligation and that any surplus to which he may be entitled will be duly returned. G. S. 1923 (2 Mason, 1927) § 8031; Selig v. Hamilton, 234 U. S. 652, 34 S. Ct. 926, 58 L. ed. 1518, Ann. Cas. 1917A, 104. His equities in such matters will be protected in the sequestration court. The argument that he may be burdened by being required

to raise and pay a 100 per cent assessment on a large block of stock when his ratable liability may not exceed three per cent, as an illustration, is fallacious. Courts are not unreasonable and do not require unreasonable or ridiculous things. When a stockholder shows such a situation he will be given proper relief.

· ■ .The alleged liability herein rests upon art. 10, § 3, of our state constitution, reading:

"Each stockholder in any corporation, excepting those organized for the purpose of carrying on any kind of manufacturing or mechanical business, shall be liable to the amount of stock held or owned by him."

G. S. 1923 (2 Mason, 1927) § 7464, relating to the transfer of shares of stock, provides:

"But such transfer shall not in any way exempt the person making such transfer from any liabilities of said corporation which were created prior to such transfer." See Gunnison v. U. S. Inv. Co. 70 Minn. 292, 73 N. W. 149; Way v. Mooers, 135 Minn. 339, 160 N. W. 1014, L. R. A. 1918B, 559; Lebens v. Nelson, 148 Minn. 240, 181 N. W. 350.

These authorities lead to the conclusion that the transferor is liable on the stock for the payment of the existing debts or liabilities of the corporation. In a running account the creditor is a subsequent creditor as to items charged against the debtor after the stock has been transferred. This may lead to difficulties. Lebens v. Nelson, 148 Minn. 240, 181 N. W. 350.

Did the existence of the mining lease at the time of the transfer of the stock herein with the corporation's assumption of the lessees' obligations therein constitute a debt or liability of the corporation for the payment of which the transferor could be assessed? In ordinary parlance "debt" includes any sort of obligation to pay money. A debt is no less a debt because it has not yet matured if it will certainly become payable for a definite amount in the future. The term embraces many obligations which in legal significance are not debts. We must keep in mind that royalties are rent. We

have so held. The unusual source imposing liability in the instant case and the results of a contrary construction require us to apply a very strict construction in determining whether a debt is here involved. It is not important whether we use the word debt or the word liability. Certainly for the purpose of a case of this character we must regard a debt as the equivalent of a fixed liability. It cannot be less.

It was held in Wilder v. Peabody, 37 Minn. 248, 33 N. W. 852, that rent accruing under a lease after the date of the assignment by the lessee for the benefit of creditors under the insolvent law was not provable as a debt. The theory was that it was not an existing debt at the time of the transfer.

In Bordman v. Osborn, 40 Mass. 295, it was held that rent does not accrue to the lessor, as a debt, until the lessee has enjoyed the use of the land. It was said in Deane v. Caldwell, 127 Mass. 242, 244, that "before the date at which rent is covenanted to be paid, it is in no sense a debt." To the same effect see Bowditch v. Raymond, 146 Mass. 109, 15 N. E. 285. True, the Massachusetts insolvency statute used the words "absolutely due," but we do not consider that controlling.

Rent accruing under a lease after the lessee has been adjudicated a bankrupt is not provable against his estate under the bankrupt act of 1898 either as a fixed liability or a bankrupt claim. In re Mahler (D. C.) 105 F. 428, 430. This was "because before the day at which rent is covenanted to be paid it is in no sense a debt."

In Bosler v. Kuhn, 8 Watts & Serg. 183, it was held that a rent service was not a debt and a covenant to pay it was not a covenant to pay a debt; and that the annual payments spring into existence and for the first time become debts when they are demandable.

In In re Jefferson (D. C.) 93 F. 948, it was held that no rent can accrue after the adjudication in such a way as to make it a debt of the bankrupt, and future rent has not in any just sense accrued before the adjudication.

The theory of the authorities is that rent for the term is not a fixed amount owing at the particular time. A lease may be terminated by the eviction of the lessee or otherwise, and no rent may

have accrued or become due. The lessor's claim is a contingent one. This is so as to the amount and also as to the very existence of the claim. In this connection it is important to keep in mind the rights of the lessees in the instant case to terminate the lease. In re Cushman (D. C.) 3 F. (2d) 449; Britton v. Western Iowa Co. (C. C. A.) 9 F. '(2d) 488, 45 A. L. R. 711; Watson v. Merrill (C. C. A.) 136 F. 359, 69 L. R. A. 719; Atkins v. Wilcox (C. C. A.) 105 F. 595, 53 L. R. A. 118; Shapiro v. Thompson, 160 Ala. 363, 49 So. 391; In re Gallacher Coal Co. (D. C.) 205 F. 183; Isaac McLean Sons Co. v. Wm. S. Butler & Co. (D. C.) 227 F. 325; In re Hutchcraft (D. C.) 247 F. 187.

Rent is something to be paid for the use and enjoyment of real estate. The occupation thereof is the consideration. If the right to occupy ceases the obligation to pay ceases. Whether the transaction ripens into a debt depends upon contingencies. The lessee may be evicted by title paramount or by the lessor. The point is that the time for payment may never arrive. In re Roth & Appel (C. C. A.) 181 F. 667, 31 L.R.A.(N.S.) 270. It would be rather impracticable to establish a rule that a transferor of corporate stock remains liable for payments of rent subsequently accruing on long-time leases. We are of the opinion that rent accruing subsequent to the transfer of stock upon a lease existing at the time of the transfer is not an existent debt at the time of the transfer.

The judgment is reversed in so far as it relates to recovery based upon rent accruing subsequent to the transfer of stock upon a lease existing at the time of the transfer; otherwise it is affirmed.