Alfred L. OCHS

v.

The UNITED STATES.

Alfred L. OCHS, and Wife, Verna L. Ochs

v.

The UNITED STATES.

Roberta OCHS, Executrix of Estate of Donald F. Ochs, Deceased

v.

The UNITED STATES.

Roberta OCHS, Individually, as the Surviving Wife of Donald F. Ochs, Deceased; as well as the Executrix of the Estate of Donald F. Ochs, Deceased

v.

The UNITED STATES.

Nos. 362–56 to 365–56.

United States Court of Claims.
July 18, 1962.
Rehearing Denied Oct. 3, 1962.

Raymond F. Garrity, Washington, D. C., for the plaintiffs. Robert A. Littleton, Washington, D. C., was on the briefs.

Cynthia Holcomb, Washington, D. C., with whom was Asst. Atty. Gen., Louis F. Oberdorfer, for the defendant. Edward S. Smith, Lyle M. Turner and Philip R. Miller, Washington, D. C., were on the briefs.

JONES, Chief Judge.

Two of these four actions consolidated for trial (Nos. 362–56 and 364–56) seek recovery of corporate income and excess profits taxes assessed against a corporation, Ochs Brothers, Incorporated, for the fiscal years ending January 31, of each of the years 1943 through 1947. Such assessments were paid in 1950 by the individual plaintiffs, Alfred L. Ochs and Donald F. Ochs.[1]

The other two suits involve the assessment for calendar year 1947 of personal income taxes against Alfred and Donald Ochs and their wives. This assessment was based on the theory that Ochs Brothers, Incorporated, was liquidated and its assets distributed during that year, causing the realization of a long-term capital gain by the distributees, the Ochs brothers. The legal aspects of the two problems as briefly outlined above will be

---

1. Roberta Ochs, plaintiff in cases numbered 364–56 and 365–56, is the surviving wife and the executrix of the estate of Donald F. Ochs.

discussed separately, although some of the facts presented below are common to both.

### Cases Nos. 362-56 and 364-56

Ochs Brothers, Incorporated, was created as a mercantile corporation under the laws of Minnesota on March 24, 1914, for a period of 30 years. As is pertinent to these cases, Alfred and Donald Ochs owned all the shares, except for one directorship qualifying share. Without plaintiffs' knowledge, the corporate charter expired on March 25, 1944. It is not disputed that under state law such expiration terminated the corporation's existence save for the purpose of closing up its affairs.[2] Not until December 1947 were plaintiffs aware of these circumstances.

Plaintiffs' discovery was subsequent to an audit by the Internal Revenue Service earlier in 1947 which culminated in a report concerning proposed deficiencies for the fiscal years ending on January 31, of 1943, 1944, and 1945. In April 1949, forms entitled "Consent Fixing Period of Limitation Upon Assessment of Income and Profits Tax," were executed for these years in the corporate name, bearing the corporate seal, and signed by "Alfred L. Ochs, former President." After several conferences with the Service, a "Waiver of Restriction on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessments" was signed in November of 1949 by Alfred L. Ochs on behalf of Ochs Brothers, Incorporated, for deficiencies proposed for each of the fiscal years ending January 31, of 1943, 1944, and 1945.

In January 1950, after audit of corporate returns for the fiscal years ending January 31, of 1946 and 1947, a "Waiver of Restriction on Assessment and Collection of Tax Deficiency" was signed by Afred L. Ochs as "former Pres." with respect to proposed deficiencies for those years.

Deficiencies were assessed against Ochs Brothers, Incorporated, on March 3 and March 10, 1950. Later in March, plaintiffs' position as regards the deficiencies was outlined in a letter to the Service. (A similar position had been taken by plaintiffs, beginning in January of 1949, in formal protests to and at intermittent conferences with the Service.) Primarily they contended that the taxes were uncollectible because the statute of limitations for assessment of deficiencies had run, since (1) the corporation no longer existed after March 25, 1944, and thus could not execute extensions to the period of limitations, and (2) Donald and Alfred Ochs had never consented to such extensions as *individual transferees* of the corporate property after March 25, 1944. In response, the Service relied on the waivers of restriction on assessments and collections of deficiencies which required that the deficiency be paid and which only then allowed disputation of the assessment through the filing of a claim for refund.

Consistent with its position, the Service twice demanded payment in May 1950. On July 27, 1950, 30-day notices of transferee liability were sent to the brothers, individually. Early in August of that year, the Service caused to be served personally on one of the Ochs brothers a warrant for distraint directed to the corporation. Tax liens were also filed in the county and directed to Ochs Brothers, Incorporated.

Believing that the warrant and liens were effective, the president of the bank with which the Ochs brothers did business informed the brothers that the bank would not honor checks on the account or make any loans until the matter was settled. Consequently, the brothers conferred on August 16, 1950, with the Service in order to negotiate a basis for the payment of the assessments against Ochs Brothers, Incorporated, and also in reference to the personal tax liability of Alfred and Donald Ochs, individually, for the calendar years 1945 and 1946. The resultant settlement allowed certain overassessments which had been granted the

---

2. See finding 9.

brothers and their wives on 1945 and 1946 personal returns to be deducted from the corporation's total deficiency. As the settlement contemplated, $17,-465.95 was collected from each of the brothers for aggregated deficiencies assessed against Ochs Brothers, Incorporated, for the fiscal years ending on January 31, of 1943 through 1947. Plaintiffs are here asking for refund.

Initially, we must decide whether Ochs Brothers, Incorporated, even though its charter had expired under state law and its existence terminated, was taxable as a corporation within the meaning of section 3797(a) (3) of the Internal Revenue Code of 1939 [3] for the period covered by the deficiency assessments.

Whether an organization is to be taxed as a corporation under the Code is determined by Federal, not state, law. Burk-Waggoner Oil Ass'n v. Hopkins, 269 U.S. 110, 46 S.Ct. 48, 70 L.Ed. 183 (1925). Section 3797(a) (3) provides: "The term 'corporation' includes associations * * *." A regulation [4] which covers the years in issue states:

> "If the conduct of the affairs of a corporation continues after the expiration of its charter, or the termination of its existence, it becomes an association."

We consider this a reasonable interpretation of the Code by the Internal Revenue Service.[5] The question remains whether, as shown by the facts in these cases, there is present the continued conduct "of the affairs of a corporation" after March 25, 1944—the date the charter of Ochs Brothers, Incorporated, expired.

On February 11, 1948, all the outstanding stock of Ochs Brothers, Incorporated, was surrendered and canceled, and Alfred and Donald Ochs entered into a written partnership agreement. The latter was a written memorandum of a purported oral agreement to operate the business as equal partners after April 30, 1944. Also in February 1948, the capital and surplus accounts of the corporation were closed out retroactively and transferred to a new partnership capital account opened as of February 1, 1947. Partnership tax returns were first filed for the fiscal year ending January 31, 1948. A notice furnished the Service in June 1948 ("Employer's Notice of Termination of Employment") signed by Alfred L. Ochs, as "Partner," indicated the corporation had been dissolved on January 31, 1947.

The events above, apart from asserted retroactivity, including the December 1947 discovery of the charter expiration itself, took place subsequent to January 31, 1947. This date marks the end of the period for which deficiencies were assessed. Clearly, at least until that date, "the conduct of the affairs of" Ochs Brothers, Incorporated, was carried on in the same manner as prior to the date the charter expired, that is as a corporation. A more detailed presentation of facts relevant to this conclusion is found in findings 11 through 16. We only note further in summary that during the years in question corporate tax returns and social security returns were filed under the name of Ochs Brothers, Incorporated, annual stockholders' and directors' meetings were held, corporate stock was issued, and bank records remained in the name of Ochs Brothers, Incorporated.

Ochs Brothers, Incorporated, therefore, was an association at least through the fiscal years ending January 31, 1947, and properly taxed as a corporation. See Coast Carton Co. v. Commissioner, 149 F. 2d 739 (9th Cir.1945), which reached the same result when dealing with comparable facts.

Plaintiffs next argue that since this organization was neither a *de facto* nor *de jure* corporation under state law, no one could have been authorized to sign

3. 26 U.S.C. (I.R.C.1939) § 3797(a) (3) (1952 Ed.).

4. Treas.Reg. 111, § 29.3797–2.

5. To the same effect see Coast Carton Co. v. Commissioner, 149 F.2d 739, 741 (9th Cir. 1945).

waivers and consents to extension of the statute of limitations as described, supra. Applicable to this contention is this court's discussion in Aldridge v. United States, 64 Ct.Cl. 424, 432 (1928), of the power of a Mississippi executrix of a deceased taxpayer to waive the running of the statute of limitations against an assessment:

"It can not be contended that the power of Congress to confer the right [to waive the statute] can be taken away by a State statute * * *. To say that the right can be granted but the privilege of exercising it can be limited or taken away by a State statute or a decision of a State court would be in effect to destroy the right and thus nullify the act of Congress."

■ Given the Service's power to tax an organization as a corporation after the termination of its corporate existence according to state law, it must follow that appropriate persons have authority to negotiate with the Service and sign consents and waivers on behalf of the organization.

■■ Plaintiffs do not argue that the assessments against Ochs Brothers, Incorporated, were improper even assuming the authority of the brothers to sign waivers and consents. But they do argue that the method of collection of the tax from themselves as individuals, or, more accurately, transferees of Ochs Brothers, Incorporated, was improper. This assertion is bottomed on the fact that the Service did not follow the procedure outlined in section 311(d), 26 U.S.C. § 311 (d) for assessing deficiencies against the transferee of a taxpayer. Implicit in reaching the point where this contention must be answered is that plaintiffs were in fact liable as transferees. Section 311 does not create any substantive liability; it is procedural only. Defendant's substantive rights against a transferee are to be determined by state law. Commissioner of Internal Revenue v. Stern, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958). Under Minnesota law, a stockholder receiving corporate capital in exchange for his stock is liable to existing creditors for whom no provision for payment was made. See Lebens v. Nelson, 148 Minn. 240, 181 N.W. 350 (1921).

■■ Plaintiffs' substantive liability is, therefore, clear. And, in answer to plaintiffs' contention, it is equally clear that section 311(d) merely provides a specific procedure for transferee assessment; it is not the only method by which defendant may proceed against transferees. Leighton v. United States, 289 U.S. 506, 53 S.Ct. 719, 77 L.Ed. 1350 (1933). What is essential is that the taxpayer at some point is allowed a judicial determination of his legal rights. See Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931). Plaintiffs' presence here attests to their being given this opportunity.

■ On the merits, the record shows that the Service has actually taken no action specifically directed toward plaintiffs as individual transferees other than the sending of 30-day notices of transferee liability. Exigencies of business demanded that plaintiffs settle the Ochs Brothers, Incorporated, assessments. Further, plaintiffs, as transferees, owed this tax; and in conference with Service representatives they agreed to and subsequently did satisfy this debt. Certainly, on these facts, the Service cannot be said to have abused its discretion in collecting from plaintiffs. Thus, the tax was validly assessed against Ochs Brothers, Incorporated, and properly collected from Alfred and Donald Ochs, transferees of the corporate assets.

### Cases Nos. 363–56 and 365–56

Both parties agree that the remaining two cases depend for their resolution on the year in which Ochs Brothers, Incorporated, was liquidated and its assets distributed to the brothers for purposes of computing capital gains tax. Defendant assessed deficiencies against the individual taxpayers on the basis that they realized a long-term capital gain in the year 1947. Plaintiffs assert that no gain was realized until 1948 and rely primari-

ly on the fact that on February 11, 1948, all outstanding stock of Ochs Brothers, Incorporated, was surrendered and canceled.

Generally, the year in which gain is realized is that year when the assets of the corporation are received by the stockholder. When, as is exhibited in the cases before us, the transferees of the corporate assets have complete control over the corporation, the date of distribution will be the date such transferees manifest their intention to presently take the property as their own. See Gensinger v. Commissioner, 208 F.2d 576 (9th Cir. 1953). The issue is one of fact to be ascertained from the entire record. Schiele v. United States, 4 F.Supp. 924, 78 Ct.Cl. 329 (1933).

Defendant contends that plaintiffs—as shown, *inter alia*, by tax and social security returns; the closing out of corporate capital stock and surplus accounts as of January 31, 1947; the reporting of salary from Ochs Brothers, Incorporated, only for the month of January 1947, while reporting a distributive share of the profits from the partnership fiscal year January 31, 1947 through January 31, 1948 on their personal returns—have manifested the intent that the corporation was liquidated and the property distributed in 1947.

However, the events relied on by defendant actually occurred subsequent to the year 1947. Plaintiffs did not even know that the corporate charter had expired until December 1947. It was on February 11, 1948, that the outstanding stock of Ochs Brothers, Incorporated, was surrendered and canceled. And, it also was not until that date that plaintiffs entered into a written partnership agreement, although the terms of that agreement mentioned April 30, 1944, as its effective date.

We do not think a taxpayer should be able to fix the date of capital gain realization by, what might be called, a manifestation of retroactive intent. To allow such control in arranging tax consequences of transactions would hardly result in an accurate reflection of a taxpayer's actual situation. For example, if such were allowed, could not plaintiffs urge that the purported effective date of the partnership agreement (April 30, 1944) was the date of liquidation? Admittedly, as of that date they did not realize the corporate charter had expired. But neither were they so informed as of January 31, 1947, the effective date of liquidation as manifested by the events upon which defendant relies.

In the Schiele case, supra, this court held that the effective date of book entries was not necessarily determinative of the date a liquidating dividend was received by the taxpayer. The Tax Court in Estate of Moore, P–H T.C. Memorandum Decisions par. 61,257 (1961), found January 14, 1957, the date when stock was actually transferred to the corporation and accepted for redemption, to be the date certain stock was redeemed. The effective date of the stock cancellation in Moore as reflected by the corporation's books was May 31, 1956. However, the evidence showed these entries were in fact made after May 31, 1956 and, therefore, were not controlling. The Moore case clearly demonstrates that manifestations of retroactive intent cannot be used to fix the date when the taxpayer presently took the property as his own.

We find that on the evidence in its totality plaintiffs did not *presently* receive corporate property from liquidation until the year 1948.

For the reasons expressed above, plaintiffs' claims for refunds in cases numbered 362–56 and 364–56 are denied with the petitions in these cases dismissed. Judgment will be entered for plaintiffs in cases numbered 363–56 and 365–56 in the amounts of $12,057.96 and $11,491.64, respectively, with interest as provided by law.

It is so ordered.

DAVIS, DURFEE, LARAMORE and WHITAKER, Judges, concur.